Matthew M. Levy, J.
The City of New York holds $8,849.86 and accumulated interest to the credit of S. Iser, Inc., (hereinafter referred to as Iser) for certain work done for the city by Iser in pursuance of public improvement contracts known as Numbers 170235, 172819, 170447, 171728, 175652 and 172094. Aside from accumulated interest, these moneys are allocated as follows: Contract No. 170235, $3,060.83; Contract No. 170447, $15.21; Contract No. 171728, $2,089.32; Contract No. 172819, $1,902.53; Contract No. 175652, $1,574.47; Contract No. 172094, $207.50. Iser is presently insolvent. Several parties have presented claims to all or portions of this fund, but the city has refused to make payment or distribution thereof, and is now retaining the moneys due Iser under these contracts pending the determination by this court of the various claims and priorities.
This is an action instituted by Davis and Warshow, Inc., for a judicial declaration as to the validity of its claims as Iser’s assignee to a part ($4,000 plus interest) of the fund, for the determination of the superiority of its claims as against all other claimants, and for a direction that the city make appropriate payment to the plaintiff. The defendants are Iser (the debtor), the city (the stakeholder), The Franklin Company Contractors, Inc. (a mechanic-lienor of the properties involved), Jet Spray Auto Washer Corp. (an alleged judgment creditor of Iser), New Amsterdam Casualty Co. (an assignee of Iser), Frank Cas *531 telento, doing business as Castel Contracting Co. (a judgment creditor of Iser), Mazella Contractors, Inc. (a judgment creditor of Iser), Lucien Nemser (a judgment creditor of Iser), Fred A. Smythe, doing business as Independent Credit Company (a judgment creditor of Iser) and United States of America (as creditor for tax indebtednesses due it by Iser).
The defendants Iser, the city, New Amsterdam, Castelento, Mazella, and Nemser have defaulted in answering (or, at least, no answers have been submitted to me on behalf of such defendants). The defendant Franklin has interposed an answer containing certain denials of the allegations of the complaint, and (without expressly designating its prayer as a counterclaim) asks affirmative judgment in its favor as against the fund in the principal sum of $1,258.68, plus interest, as a mechanic lienor, and as against Iser for any deficiency. The defendant Jet has also interposed an answer containing denials and has set up three defenses — (1) that this court has no jurisdiction; (2) that Jet has obtained a judgment against Iser in the sum of $3,821.54, that a third-party subpoena was issued thereon against the city, that the city has been directed by the City Court of the City of New York in such supplementary proceedings to make payment thereof to Jet, and that, therefore, there has been an adjudication on the merits as to Jet’s rights; and (3) that there is an action still pending and undisposed of between the plaintiff and Jet and other parties upon the same cause of action set forth in the complaint. The defendant Smythe, in his answer, in addition to denials, has alleged, by way of “ further answering the complaint herein and for counter claim and cross action”, (1) that the defendant Franklin has failed to obtain a due extension of its mechanic’s lien enabling it to institute an action thereon or to file a lis pendens, and, therefore, the lien of said defendant is void, and (2) that Jet has been fully paid on its claim and therefore has no present claim upon the fund. Smythe asks for judgment in his favor out of the fund in the principal amount of $1,458, plus interest, as a judgment creditor of Iser in that amount. In its amended answer, the defendant United States, setting forth certain denials and admissions, has also pleaded as a defense and cross claim that it has duly assessed certain taxes against the defendant Iser, totalling $6,659.16, plus interest, and that the claims of all of the other parties are subordinate to such Federal tax liens, and asks a declaration of rights accordingly.
The plaintiff has moved for summary judgment in its favor (Bules Civ. Prae., rule 113). The defendant United States has cross-moved for a denial of the plaintiff’s motion and for partial *532 summary judgment in favor of the United States (Rules Civ. Prac., rule 114). On these motions,[1] it appears that all of the parties, except the defendant Iser, have served or been served with the respective notices of motion, whether such parties have appeared in the action or answered the complaint or have not. Affidavits have not been submitted on behalf of the defendants Jet, Castelento and Mazella, and, as to the defendants Iser and the city, the affidavits on their behalf assert no claim to the fund on hand or any portion thereof, and merely present factual data in respect of certain facets of the situation submitted to me for resolution.
Because it appears — at first blush at least — that the United States may be entitled to a primary priority as against all of the parties to this proceeding, I think it will facilitate an understanding of the issues if the cross motion of the United States were first studied and the claim of priority of the United States were resolved separately vis-a-vis the claim of each of the other parties.
*533 Under section 6322 of the Internal Revenue Code, the tax lien will be deemed to have arisen at the time of the assessment thereof, but section 6323 provides that a tax lien is not valid as against “ any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed ”. The United States assessed unpaid withholding taxes against the defendant Iser on September 9, 1954 in the sum of $1,943.26, on May 31, 1955 in the sum of $1,902.61, and on August 31, 1955 in the sum of $2,003.17. Delinquent interest to April 5, 1957, amounted to $810.12. The total tax lien amounts to $6,659.16. On April 4, 1957, notices of these liens were filed with the Register of the City of New York, pursuant to the requirements of New York law (Lien Law, § 240). Recovery thereof, with interest to the date of payment, is demanded out of the fund of $8,849.86 held by the City of New York to the credit of the debtor. What are the rights of each of the competing claimants in the light of this Federal tax lien?
The alleged claim of defendant Jet does not appear on the lien docket maintained by the Register of the City of New York for that purpose (Lien Law, § 10). This is not necessarily decisive as to the position of Jet for it might be able to establish itself as a creditor, lien or otherwise, in some other fashion. Jet, however, makes no claim to any of the moneys held by the city under contracts with Iser and now says that it has been paid. There is no showing of the amount and date of such payment and for the purposes of these motions it will be assumed that payment was made to Jet by the city prior to submission herein of the affidavit, sworn to May 20, 1959, submitted by the Corporation Counsel of the City of New York. Nothing said in this opinion shall be construed as approval of any payment made to Jet before that date and the rights of all parties with respect to any such payment shall be unaffected.
The defendant Smythe filed his judgment against the debtor Iser for $1,458 on February 24, 1958, by way of third-party subpoena, and the defendant Nemser filed his judgment for $8,520 against the debtor Iser (by the same method) on February 11, 1958 — in both instances long after the Government assessed and docketed its lien for taxes. Tax liens are entitled to priority as against judgment creditors who file judgments subsequent to the filing of the tax liens (United States v. Security Trust & Sav. Bank, 340 U. S. 47). Since the judgments of both of these claimants were entered after the filing of the Federal lien, they must yield to the tax priority of the Government.
*534 The defendant Castelento obtained a judgment against the debtor Iser for $4,069.25 in the City Court of the City of New York, Queens County, on February 8, 1957, and served a third-party subpoena upon the City of New York (pursuant to Civ. Prac. Act, § 781) on April 11, 1957. It will be recalled that the tax liens were filed on April 4, 1957. In the circumstances, the lien of the defendant Castelento must also yield to the lien of the Government. It is true that Castelento’s judgment was acquired prior to the filing of the notice of the tax lien. But, at the time the latter notice was filed by the United States, Castelento, while a “ judgment-creditor ” (see United States v. Gilbert Associates, 345 U. S. 361), was not a “judgment-lien-creditor ”. And the protection accorded a judgment creditor within the meaning of section 6323 does not apply until his judgment becomes a lien under State law (Miller v. Bank of America, 166 F. 2d 415; Fidelity & Deposit Co. v. New York City Housing Auth., 241 F. 2d 142). In New York, a judgment becomes a lien on funds in the hands of a third party from the time of service of a subpoena and restraining order in proceedings supplementary to judgment (Civ. Prac. Act, §§ 779, 781). Thus, Castelento’s judgment did not become a lien until the third-party subpoena was served upon the city, and this was a week subsequent to the filing of the notice of the Federal tax lien. I hold, therefore, that Castelento’s lien is subservient to that of the Federal Government. The decision in United States v. New York Telecoin Corp. (170 F. Supp. 513) supports this view. In that case, the judgment-creditors did not allege that execution and levy or service of a third-party subpoena came prior in time to the filing of the tax lien, and the court held that the tax lien was entitled to priority.
The defendant Mazella obtained a judgment against Iser for $698.90. Execution was issued and a levy made thereon on March 21,1957. This levy was not discharged by payment, and another execution was issued on September 11, 1957, which latter execution was, on January 8, 1958, continued for six months by court order. Subdivision 7 of section 687-a of the Civil Practice Act provides that any levy made pursuant thereto shall become void if not discharged by payment within 120 days and an authorized action has not been commenced unless the time to commence such action has been extended by court order beyond the 120-day period. In this case, the 120 days ’ extension was not obtained with respect to the first execution and levy, and the levy, therefore, became void by operation of law. Since, as has been seen, execution must come prior in time to the filing of a tax lien — in order that a judgment-creditor may avail *535 himself of the preference provided by section 6323 of the Internal Revenue Code — I hold that the United States must prevail over Mazella as well. This is so because, under subdivision 7 of section 687-a of the Civil Practice Act, the first execution dated March 21,1957, had become void, and the latter execution came subsequent in time to the filing of the tax lien (cf. Matter of Lycee Francais de New York v. Calagna, 26 Misc 2d 374, 380-382).
Thus the United States is entitled to priority over all of the judgment creditors of Iser. It remains now to determine whether the Federal Government should also prevail as against the defendant Franklin, the defendant New Amsterdam, and the plaintiff. It should be noted here that, as respects mechanic’s lienors, this litigation is subject to the provisions of old article 3-A of the Lien Law (L. 1942, ch. 808). This statute was repealed in 1959 and was re-enacted with modifications by chapter 696 of the Laws of 1959. Thus, it is necessary for me to consider and apply the law as it existed between 1942 and 1959 and to construe a statute which is no longer on the books.
The defendant Franklin’s claim raises the basic issue as to whether the debtor Iser had any “property” or “ rights to property” (Internal Revenue Code of 1939, U. S. Code, tit. 26, § 3670 [now § 6321]) in any balance due by the city under Contract No. 170235 so long as Franklin’s claim and any other lien claims applicable to that contract were unpaid. A reading of the answer and affidavit submitted on Franklin’s behalf makes it appear that material was furnished and labor was performed by Franklin specifically for the improvement under Contract No. 170235. Franklin made its deliveries and rendered its services between January 3,1955 and February 7,1955. This period is subsequent to the first (Sept. 9, 1954 for $1,943.26) but prior to the second and third tax assessments (May 31, 1955 eor $1,901.61 and Aug. 31, 1955 for $2,003.17) respectively.
Section 5 of the Lien Law gave Franklin a lien for the principal and interest of the value or agreed price of the labor performed and materials furnished upon the moneys applicable to the construction of the public improvement under Contract No. 170235. Notice of such lien could have been filed at any time before the construction of the public improvement had been completed and accepted and within 30 days after such completion and acceptance. (Lien Law, § 12.) Franklin filed its mechanic’s lien on April 14, 1956, which was subsequent to the tax assessments but prior to the filing of the tax lien. The record fails to disclose whether this mechanic’s lien was filed within the statutory period, but, in my view of the case, that is unimportant *536 if Franklin was still the beneficiary of a trust under former section 25-a of the Lien Law in regard to the balance due by the city to Iser on Contract No. 170235.
The first assessment for $1,943.26 antedated the material supplied and the work done by Franklin for the improvement under Contract No. 170235. The second and third assessments came thereafter. The Grovernment’s tax lien arises when the assessment is made, and the question presented is whether at the time of the assessments Iser had any “ property ” or “ rights to property ” under Contract No. 170235 with the City of New York to which the Government’s liens could attach. There is no proof as to the existence on these dates of any amounts due by the city to Iser. But, assuming there was an indebtedness from the city to Iser on Contract No. 170235 when the assessments were received, the further question arises as to whether unpaid mechanic’s lienors were entitled to satisfaction before any moneys were paid by the city to Iser or to the Federal Government by virtue of its tax liens against Iser. Put in another way, the question is whether such indebtedness constituted “property” or “rights to property” belonging to Iser without regard to unpaid lien claims of subcontractors, laborers and materialmen arising out of the public improvement covered by the contract.
In a somewhat similar situation, where the contest involved a balance due by the owner of certain real estate, the New York Court of Appeals decided that the Federal Government, by virtue of a tax lien against the “property” and “rights to property ” of a delinquent taxpayer-general contractor, was entitled to prevail over unpaid subcontractors who had improved such property (Aquilino v. United States of America, 3 N Y 2d 511, supra). The United States Supreme Court, however, remanded the Aquilino case to the Court of Appeals for the purpose of having that court “ ascertain the property interests of the taxpayer under state law ” (363 U. S. 509, 516). In the United States Supreme Court, the Government insisted that 'the New York Lien Law simply gave the subcontractors an ordinary lien. The subcontractors challenged this construction of the statute and directly placed in issue the question as to whether the trust established under the New York Lien Law was a true trust which gave the contractor only bare legal title and a beneficial interest solely in any balance remaining after the claims of the subcontractors had been paid.
Upon remand the New York Court of Appeals decided that, under the 1942 amendments to the Lien Law (former § 36-a), “ a contractor does not have a sufficient beneficial interest in *537 the moneys, due or to become due from the owner under the contract, to give him a property right in them, except insofar as there is a balance remaining after all subcontractors and statutory beneficiaries have been paid.” (Aquilino v. United States, 10 N Y 2d 271, 282). This conclusion gives expression to the policy proclaimed by the statute “ to protect those whose skill, labor and materials made possible the performance of a construction contract and who in fact, creating the improvement, actually gave rise to the owner’s obligation to pay.” (10 N Y 2d 271, 278-279.)
The latest decision of the Court of Appeals in Aquilino resolves the question of priority as between Franklin and the United States. A defaulting taxpayer-contractor has no right in any moneys due him under his contract with the private owner until and unless he has satisfied the claims of the beneficaries of the statutory trust (see, also, American Blower Corp. v. James Talcott, Inc., 10 N Y 2d 282; Seligson, Creditors’ Rights, 1957 Annual Survey of American Law, pp. 327-342; Seligson, Creditors’ Rights, 1960 Annual Survey of American Law, 36 N. Y. U. L. Rev., 601-606, 610-612). True, the Aquilino case involved private property and the instant case involves a public improvement, but, as I see it, the principle is the same in both cases. Indeed, in its submission to me in the case at bar, the United States recognizes that that decision holds that former section 25-a created a trust for the benefit of the beneficiaries specified therein, with the result that the contractor does not have sufficient “ property ” or “ rights to property ” in a fund due from an owner to enable Federal tax liens to attach thereto. It contends, however, with much vigor, that Aquilino is not dispositive of the issues raised in the instant action because this suit is not the “ representative action” required by the applicable section of the Lien Law and because it was not instituted within the one-year period prescribed by the statute.
If the trust terminated upon the expiration of the statutory period within which a lienor could initiate action to enforce the trust for his benefit, then the contractor has “ property ” or “ rights to property ” in the funds due from the owner, and the Federal tax lien would doubtless attach immediately to such indebtedness owing by the owner to the contractor — subject, of course, to liens having priority over the Government under section 6323 of the Internal Revenue Code. It is true, as the Government argues, that Aquilino (relied upon by the subcontractors) does not reach the question of the duration of the trust created by former section 36-a and makes no determination as to whether, upon the expiration of the statutory period within *538 which an action to enforce the trust may be brought, the trust ceases to exist. It is, however, my opinion that the statutory trust may continue even after the expiration of the one-year period of limitation. The Law Revision Commission, in its 1942 Report (p. 285), points this up[2] when it states that the time within which the beneficiary may commence the representative action is “ a short period of limitations ’ ’. This denotes a procedural defense — which may or may not be affirmatively interposed by an appropriate party in interest, not the Government on the basis of a tax lien — rather than a condition precedent to the substantive “ right ” of the beneficiary to the “ property ” involved — thus affording possible priority to the Government’s claim of tax lien against the contractor.
Article 3-A, as now in force, states that a trust arising thereunder “may be enforced by the holder of any trust claim * * * in a representative action brought for the benefit of all beneficiaries of the trust.” (Lien Law, § 77, subd. 1.) Such a representative action may be maintained at any time during the public improvement and not more than one year after its completion (Lien Law, § 77, subd. 2). These trust fund provisions are in sharp contrast to the provisions of the Lien Law giving a lien to persons for work done or materials furnished in respect of the construction or demolition of a public improvement. Such a lien “ shall not continue for a longer period than six months from the time of filing the notice of such lien, unless an action is commenced to foreclose such lien within that time,” and an appropriate notice of the pendency of such action is filed, or unless a court of record orders the lien continued (Lien Law, § 18). Thus, in case of the trust, the statute prevents the maintenance of a representative action if not instituted within *539 the prescribed one-year period (Lien Law, § 75), whereas, in case of the lien, the statute terminates the lien unless a foreclosure action is commenced within the six-month period or the lien is continued by court order (Lien Law, § 18). Moreover, subdivision 3 of section 70 specifically provides that the trust “ shall continue with respect to every asset of the trust until every trust claim arising at any time prior to the completion of the contract or subcontract has been paid or discharged, or until all such assets have been applied for the purposes of the trust.” These provisions negative the notion that the trust terminates if an appropriate action is not begun within the one-year period.
As I have hereinbefore noted, the present article 3-A became effective in 1959 and this case must, therefore, be decided under the law as it existed between 1942 and 1959. But, as I view it, the result is the same whether the earlier or present statute is applicable. Former section 25-a created a trust upon the funds received by a contractor for a public improvement. The statute directed that the trust funds “ be applied first to the payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement ’ ’. A similar trust was imposed upon funds received by a subcontractor for a public improvement (Lien Law, former § 25-b). A trust under former section 25-a or former section 25-b might be enforced by any person entitled to share in the fund. Under former section 71 a representative action was required, and, as I have hereinbefore noted, such an action was not “ maintainable if commenced more than one year after completion of the improvement on account of which the claim arose.” (Lien Law, former § 75.) In substance, therefore, the trust fund provisions in regard to the creation and enforcement of the trust were the same before the 1959 amendments as they are now, although the earlier provisions made no express reference to the duration of the trust.
The legislative history of former article 3-A as enacted in 1942 makes it clear that it was procedural and was not intended to affect the substantive rights of the trust beneficiaries (1942 Report of N. Y. Law Rev. Comm., p. 285). It is pointed out in the commission’s report “ that the trust arises as soon as the trustee designated in the provision receives the fund,” and continues ‘ ‘ until all claims for services and material on the improvement (by the classes designated in the statutory provision) have been paid ” (ibid., pp. 325, 326). Hence, subdivision 3 of present section 70 of the Lien Law, making specific provision for the duration of the trust, simply spells out what *540 was the legislative intent in respect of the 1942 amendments. The contractor or subcontractor, as the case may be, “is a resulting beneficiary, who is entitled to any remainder of the fund after it has been distributed to claimants entitled to share in it ” (ibid., pp. 325-326).
The instant action — it is true, as contended by the Government— is not in form the representative suit comprehended by the statute (Imperial Plumbing & Heating Corp. v. Stratford Development Corp., 26 Misc 2d 815). That, however, is not fatal to the claim of Franklin, a beneficiary of the trust fund with regard to Contract No. 170235. Since the defendant city (who is the owner), the defendant Iser (the contractor who would become the trustee of any moneys paid to Iser by the city in pursuance of the agreement) and the plaintiff and the defendant Franklin (the subcontractors who are the beneficiaries for whom the trust was statutorily established)[3] are parties to this action, and since what is sought herein is a declaration of rights, the court may permit an amendment of the pleadings so as to convert the suit into the form of a representative one (cf. Imperial Plumbing & Heating Corp. v. Stratford Development Corp., 26 Misc 2d 815, supra). The trust is still in existence, all parties claiming any interest in the moneys held by the city have been duly served with process, and the court has jurisdiction to determine the right of the parties before it.
As to the Government’s claim that the Statute of Limitations of one year precludes a holding that the beneficiaries have not been denuded of their interest in the fund, I disagree. As I have hereinbefore indicated, the present is not, in my view, a case in which the ‘ ‘ time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone. It is [not] a condition attached to the right to sue at all” (The Harrisburg, 119 U. S. 199, 214; Carr v. Yokohama Specie Bank, 272 App. Div. 64, affd. 297 N. Y. 674). This is not, in the light of the history and language of the statute, a case where the period of limitation is to be “ regarded as a matter of substance limiting the right as well as the remedy, and [where] the filing of a suit within the prescribed period is a condition precedent to a recovery, and [where] the cause of *541 action is extinguished after the running of the period ” (Citrone v. Palladino, 77 N. Y. S. 2d 489, 491, per Froessel, J.).
It follows that the only “ property ” or “ rights to property ” which Iser has in the moneys due from the city under Contracts Nos. 170235, 171728, 172819 and 175652 are a residual or contingent interest, subordinate to the claims of all persons who have supplied material or performed services upon that public improvement. And, until such claims have been paid or settled, there is no “ property ”or“ rights to property ” in the amount due by the city under those contracts to which the Government’s lien can attach (Aquilino v. United States of America, 10 N Y 2d 271, 280, 282). And it follows further that, under the “ trust funds ” theory, Franklin is entitled to be paid out of any balance due on Contract No. 170235 before any payment is made to the United States.
We come now to the plaintiff’s claim. The plaintiff alleges that it had furnished the debtor Iser with supplies which had been utilized by Iser in performance of certain contracts with the city. Thereafter the plaintiff had demanded payment from Iser, and Iser lacked the funds with which to make such payment, and did not do so. On or about September 27, 1955 Iser assigned to the plaintiff $2,500 due or to become due Iser under Contract No. 170235 with the city and $1,500 due or to become due Iser under Contract No. 172819, totalling the sum of $4,000. These assignments were consented to by the Department of Public Works on October 13, 1955, and were filed in the office of the Comptroller of the City of New York on October 17,1955. It has been stipulated by the parties in interest that, on September 27, 1955, when the assignments to the plaintiff were executed, there was a balance due to the plaintiff of $5,123.50 for plumbing supplies and materials furnished to the debtor Iser between December 2,1953 and June 6,1955 for the improvement of Sanitation Garage District No. 4 under Contract No. 170235, and that there was a balance due to the plaintiff of $1,694.36 for plumbing supplies and materials furnished to the debtor Iser between March 3, 1954 and July 26, 1955 for the improvement of New Utrecht Library under Contract No. 172819.
It thus appears that, if the plaintiff had not accepted the assignments from the debtor Iser, its position would be the same as that of Franklin, and it would be entitled to priority over the United States with respect to any balances on Contract Nos. 170235 and 172819. Did the plaintiff subordinate its position to that of the United States by the acceptance of the assignments? I think not.
*542 On September 27,1955, when the assignments were made, the plaintiff was a lien creditor to the extent of $6,817.87. It was also the beneficiary of the statutory trust created by former section 25-a of the Lien Law. At that time debtor Iser’s interest in the two contracts with respect to which plumbing materials had been furnished by the plaintiff, to wit, Contract No. 170235 and Contract No. 172819, was only the balance remaining after the satisfaction of the plaintiff’s liens and any other mechanic’s liens on these two projects (Baldwin Kitchen Cabinet Corp. v. Artz, 27 Misc 2d 265). The City of New York could have withheld payment of any moneys to debtor Iser on these contracts until the plaintiff’s liens had been satisfied. Hence, on September 27, 1955, debtor Iser could have paid the plaintiff by funds received from the city on such contracts whatever was due to the plaintiff in respect thereof, notwithstanding the existence of the Federal assessments and liens.
Assuming that the plaintiff rests its claims upon the assignments, the validity of these assignments is contested on the ground, among others, that they were given in violation of article 19 of the Public Works Contracts between Iser and the city. A copy of such contract was not submitted hereon, but I shall assume that the issue is properly before me and that the relevant clause is accurately quoted in the Q-overnment’s brief. The contract article provided that the “ contractor [Iser] shall not assign * * * any of the monies due or to become due under this contract, unless the previous written consent of the Commissioner shall first be obtained thereto.” (Italics supplied.) I do not see any merit to this contention. Consent there was, and written too, although it was given after the execution of the assignment. And the assignment was filed after such consent was had. The contractual clause was inserted for the benefit of the city, and the city has not raised any question as to the validity of the assignment or as to the failure to have its prior written consent thereto. In the circumstances, I hold that a contesting claimant to the fund has no cause for objection or complaint. While I cite no judicial precedent in point, I think that the many cases arising under the law of insurance are analogous and apposite. Thus, where a life insurance policy requires that a change of beneficiary or an assignment of the policy be made upon a form supplied by the insurance company, and consented to by it, the failure to comply with this clause does not invalidate the change or assignment in a controversy as between several claimants where the company does not raise the issue and is in the lawsuit merely as a stakeholder of the *543 proceeds of the policy (Considine v. Considine, 255 App. Div. 876, 877).
It is also contended, in opposition to the plaintiff’s claim, that, when the assignments were made by Iser, the work done had not yet been completed by Iser and accepted by the city, and that, therefore, there was nothing which Iser might assign. It may be that neither the date of completion nor the date of acceptance has been set forth in the papers with adequate probative force[4] and it is urged by the Government that the dates referred to are relevant to the plaintiff’s recovery since that depends upon whether the plaintiff’s assignments at the time they were executed were of an inchoate interest, and, therefore, unperfected and merely equitable, or whether the plaintiff’s interest was specific at the time of the assignments, perfected and choate, so as to operate as a transfer of legal title to the plaintiff and as a superior right to the Federal tax lien.
This contention by the Government in respect of the assignments would have no validity if in fact the work had been completed before the dates of the respective assignments. On the other hand, the basis for the argument would be sound if the work was incomplete when the applicable assignment was made, provided it could be proven that the parties did not intend a present and irrevocable transfer of the property interest. But there is no allegation to that effect here.
Moreover, the Court of Appeals of this State has held in a recent decision, that, in a competition between an assignee who receives a property interest in a fund not yet due the assignor and the Federal Government asserting priority under its tax lien against the assignor, the assignee is entitled to prevail with respect to the assigned interest provided the assignor and assignee intend an immediate transfer of title at the time of the execution of the assignment (Matter of City of New York [United States of America — Coblentz], 5 N Y 2d 300). In this case, a client-taxpayer involved in a condemnation proceeding with the City of New York had entered into a retainer contract *544 under which he had agreed, for services as rendered and to be rendered in the condemnation proceeding, to pay and assign to his attorney 20% of the award and interest. Construing the express language of the agreement, the Court of Appeals declared that “ the parties must be deemed to have intended to, and in fact did, accomplish an immediate transfer of a percentage interest * * * which became effective at, as and of the time of the making and which amounted to a pro tanto assignment of the proceeds.” (5 N Y 2d 307.) Thus, the attorney ‘1 presently acquired a vested property interest in the award which he had ‘ purchased ’ for a good and valuable consideration ”. (5 N Y 2d 307-308.) After the retainer contract was executed there was nothing that the client could do to disturb the percentage interest which had been acquired by the attorney and “ the measure of the client’s £ property and rights to property ’ (the cause of action) from the date of the retainer contract was the balance remaining after transfer to the attorney of his agreed share.” (5 N Y 2d 308.) The express language of the assignments in this case makes it clear that the parties intended an immediate transfer of title to $1,500 in Contract No. 172819 and to $2,500 in Contract No. 170235. The plaintiff, therefore, could hold valid assignments under the authority of the Coblentz case (5 N Y 2d 300, supra).
Even were my holding in this respect incorrect, the Government’s cross motion for summary judgment in its favor would nevertheless be denied to the extent of the plaintiff’s interest in the two contracts. The question would still remain as to whether the plaintiff could establish that it was a ££ purchaser ” within the meaning of section 6323 of the Internal Revenue Code. That section provides — it will be recalled — that the Federal tax lien shall not be valid as against a 11 mortgagee, pledgee, purchaser, or judgment creditor ’ ’ until notice of such lien has been filed. Since notice of the Federal tax lien here was not filed until April 4, 1957, the plaintiff, if it qualifies as a purchaser, would have priority, as the assignments to it were made on September 27, 1955 and were filed on October 17, 1955. There is no claim that the plaintiff is a “mortgagee”, “ pledgee” or “ judgment creditor”. It does claim to be a “ purchaser ”.
Is an assignee a “ purchaser ” within the meaning of section 6323? In the Coblentz case (supra) the courts below had ruled that the attorney was a “ purchaser” within the meaning of the Federal tax statute (see 5 N Y 2d 309). Those courts, however, had also decided that the only “property” or “rights to property” belonging to the taxpayer-client after *545 the retainer agreement had been executed were the balance of the proceeds remaining after the satisfaction of the attorney’s interest. The Court of Appeals (see 5 N Y 2d 309) noted that when the taxpayer-client had executed the retainer agreement, it had effectively divested itself of so much of its cause of action, and that the Government’s lien could attach only to the unassigned balance. The pivotal question, as the Court of Appeals pointed out (p. 310), was not “ priority in payment of conflicting claims ” but who held the “ 1 property and rights to property ’ liable for the tax”. Accordingly, the question in Coblentz was not whether the attorney was a “ purchaser ” by Federal standards — a question which it was unnecessary for the court to determine in that case — but to what extent the taxpayer-client had “ property” subject to the Government’s tax lien.
State law determines what rights and interests the taxpayer and his creditors have in property sought to be attached by a Federal tax lien (United States v. Bess, 357 U. S. 51; Aquilino v. United States, 363 U. S. 509, supra; United States v. Durham Lumber Co., 363 U. S. 522). But classification of these State-created interests is a Federal function (United States v. Acri, 348 U. S. 211; United States v. Waddill, Holland & Flinn, Inc., 323 U. S. 353). And no State-created rule can defeat the superior right of the United States to levy and collect taxes (United States v. New Britain, 347 U. S. 81). When there are competing liens, the State courts are bound to follow Federal law in interpreting the Federal statute involved.
I have been cited, and I have found, no determination by the Supreme Court of the United States of the issue now before me. Nor do there appear to be decisions of the intermediate Federal courts of appeal which might be taken as the touchstone of the applicable law in the light of the instant facts. It has thus fallen to my lot to seek to ascertain what the authoritative Federal courts would decide in the present circumstances, assuming that such an issue were duly presented to such courts for disposition. That I shall now endeavor to do (cf. what Friendly, J., said as to such a problem in Nolan v. Transocean Air Lines, 276 F. 2d 280, 281; see, also, Phillips v. Phillips, 15 Misc 2d 884, 888-890).
According to some Federal decisions, a naked assignee for the simple consideration of a past-due obligation of the debtor is not a ‘ ‘ purchaser ’ ’ within the meaning of the statute (United States v. Franklin Fed. Sav. & Loan Assn., 140 F. Supp. 286; Filipowicz v. Rothensies, 43 F. Supp. 619). On the other hand, an assignee for present consideration is deemed to be a “ pur *546 chaser ’ ’ (Marteney v. United States, 245 F. 2d 135; National Refining Co. v. United States, 160 F. 2d 951). I hopefully undertake to say that these decisions correctly represent the prospective authoritative Federal judicial pronouncement on the subject. In my view, if a bland assignment were intended to suffice, as distinguished from an assignment which was “ purchased ” by the assignee, the Congress might very readily have included a mere “ assignee ” within the protected categories of section 6323. And I think that a “ purchase ”, at the least, envisages some consideration therefor. Consideration of some kind, then, I hold there must be for the assignment; and that consideration cannot be merely an antecedent debt.
Whether the consideration claimed for the assignment in the instant case establishes the plaintiff as a “ purchaser ’ ’ thus remains for determination. The plaintiff claims that Iser executed the assignments to it in consideration of the plaintiff’s agreeing not to file mechanics’ liens and thus interrupting or preventing the construction and completion of the improvements in question. There is no doubt that a promise of forebearance would suffice to validate a simple counterpromise (1 Williston, Contracts [3d ed., Jaeger], §§ 135,135A, 135B). But it does not follow that the transaction effecting the ‘ ‘ purchase ’ ’ referred to in the Internal Revenue Code requires only formal consideration. The Supreme Court of the United States has said that a “ purchaser ” within the meaning of section 3672, the predecessor of section 6323, is one who acquired title for a ‘ ‘ valuable consideration in the manner of vendor and vendee ” (United States v. Scovil, 348 U. S. 218, 221). A waiver of its lien and trust rights by the plaintiff would in my view be that kind of valuable consideration and which would effectuate a change of status of the plaintiff from that of a “ creditor ” of Iser to that of a “ purchaser ” from Iser (cf. Greenblatt v. Utley, 240 F. 2d 243; Ricotta v. Burns Coal & Bldg. Supply Co., 264 F. 2d 749). Such consideration would be of the same essence as that in Coblentz (5 N Y 2d 300, supra) and Marteney (245 F. 2d 135, supra). Without its pre-existing lien and trust rights, the plaintiff would be a naked assignee. My holding, in brief, is that the plaintiff could be a “ purchaser ” of Iser’s claim against the city under the two contracts in question by virtue of the assignments to the plaintiff by Iser.
The assignments to the plaintiff were filed with the Department of Finance of the City of New York within 20 days after their execution, as required by section 16 of the Lien Law. There is no showing, however, as to whether the assignments were also filed with the department or bureau head in charge of the con *547 struction, another requirement of section 16. Assuming that the assignments were not so filed, the Federal Government is still not in position to complain. It is true that section 16 provides that an assignment ‘ ‘ shall have effect and be enforceable from the time of such filing,” but I hold that this provision was designed to protect public corporations; and the public corporation here involved, the City of New York, has recognized the assignments here involved (cf. Martin v. National Sur. Co., 300 U. S. 588). An unrecorded assignment is “ absolutely void as against a subsequent assignee in good faith and for valuable consideration, whose assignment * * * is first duly recorded.” (Lien Law, § 16.) But the Federal Government does not have the status of such an assignee.
My holding that the United States is not entitled to summary judgment in regard to the balances claimed by the plaintiff under Contracts No. 170235 and No. 172819 does not me°an that the plaintiff is entitled to have its motion for summary judgment granted. As indicated above, the papers submitted fail to disclose the circumstances under which the assignments were given to the plaintiff by Iser. There is nothing here to show whether the plaintiff intended to and actually did release its liens and trust rights in consideration of the execution and delivery of the assignments to it. Nor does the record before me show whether the assignments were given as additional security or whether plaintiff agreed to accept $4,000 in settlement of its claim for $6,817.86. Furthermore, there is an issue of fact raised by the denial that the assignments were made for the consideration asserted and the counterallegation that the assignments to the plaintiff by Iser were made collusively in contemplation of Iser’s going out of business. The plaintiff is an interested party, the language of the written assignments reveals nothing except that each was made for the consideration of $1, and Iser’s affidavit does not support the plaintiff’s case.
Franklin has asked for affirmative judgment in its favor as against the fund in the principal sum of $1,258.68, plus interest. Franklin’s mechanic’s lien is confined to the balance due on Contract No. 170235, and that balance is $3,060.83. That amount obviously is insufficient to satisfy the $2,500 interest of the plaintiff under the same contract and Franklin’s mechanic’s lien. The plaintiff’s assignments preceded the filing of Franklin’s mechanic’s lien, but that is not necessarily decisive on the question of priority as between these two claimants. Section 25 of the Lien Law spells out elaborate provisions for the determination of priority of liens and assignments under contracts for public improvements. The determination as to whether the *548 plaintiff’s assignments come within the scope of section 25 and the question of priority as between the plaintiff and Franklin must await the trial of this action. Consequently, Franklin’s prayer for affirmative judgment in its favor must also be denied.
The claim, as assignee, of the defendant New Amsterdam, raises several questions — some the same as those hereinbefore considered, and others different. New Amsterdam on February 26,1957 received an assignment in the amount of $600 from Iser of moneys due or to become due to Iser under City Contract No. 171728 with respect to the Harlem Retail Market and an assignment in the amount of $660 from Iser of moneys due or to become due to Iser on City Contract No. 175652 with respect to the Coney Island Branch Library. These assignments were filed in the office of the Comptroller on February 27, 1957. Copies of these written assignments have not been produced but, according to an affidavit of an attorney for New Amsterdam, the assignments were executed and delivered in consideration of the payment by New Amsterdam to Asbestos Construction Company, Inc., on February 26,1957 of $600 for work done under Contract No. 171728 and of $660 for work done under Contract No. 175652. It is claimed that on January 20, 1956 Asbestos, a subcontractor of Iser, had filed a notice of lien against Contract No. 171728 and on the same date had filed a notice of lien against Contract No. 175652. New Amsterdam had theretofore executed certain performance and payment bonds in favor of the Department of Public Works of the City of New York for plumbing work to be performed by Iser at the Harlem Retail Market and the Coney Island Branch Library. The assignments to New Amsterdam were executed on February 26 and filed on February 27, 1957. This, it will be remembered, was subsequent in time to the dates of the several tax assessments but prior to the filing of the notice thereof by the Government. If, when the assignments were executed, Asbestos had valid liens and trust claims against the balances due to Iser on City Contracts No. 171728 and No. 175652, then, as indicated hereinbefore in the discussion of the plaintiff’s claim, Iser’s interest in the balances under such contract extended only to any excess over the amounts of the claims of Asbestos (cf. United States v. Toys of World Club, 288 F. 2d 89). New Amsterdam seems to have advanced a total of $1,260 to satisfy the claims of Asbestos and if Asbestos at that time had valid liens, the Government lost nothing by the transaction.
But, aside from this fact, the question arises as to whether New Amsterdam, by virtue of its payment of the Asbestos claims and the assignments to it, became a “ purchaser ” within section *549 6323 of the Internal Revenue Code. For the reasons discussed in connection with the plaintiff’s claim, I hold that New Amsterdam qualified as a “purchaser” under the Federal statute. Since the assignments preceded the filing of the notice of tax liens, New Amsterdam is entitled to prevail over the Government. There appears to have been, in the case of the instant claimant, a complete discharge and novation, and I hold that this transaction involved present consideration of value within the requirements of the rule heretofore enunciated.
The contention of the United States that, since the assignments to New Amsterdam were “ of moneys due or to become due ” Iser, the assignments were inchoate and the assignee did not become a “ purchaser ” under section 6323 is overruled, for the same reason that I rejected the argument along the same lines made by the Government in opposition to the plaintiff’s claim. On the basis of the facts presented on this submission, I hold that the property assigned had become the property of the assignee, even though at the time of the assignments it had not yet become the property in law — as distinguished from the property in equity — of the taxpayer.
However, while, as I see it, New Amsterdam qualified as a “ purchaser ” within the meaning of section 6323 of the Interna] Revenue Code, its rights are limited to the property assigned. The city is holding $2,089.32 allocated to Contract No. 171728 and $1,574.47 allocated to Contract No. 175652 — which are other than the ones hereinbefore considered in respect of other claimants (Nos. 170235 and 172819). New Amsterdam is entitled to $600 from the balance of $2,089.32 and $660 from the balance of $1,574.47. On the other hand, the Federal tax lien is a general one and attaches to all of the taxpayer’s property, including the funds due Iser on all of these contracts (United States v. New Britain, 347 U. S. 81, supra). Therefore, the Government is entitled to the excess over $600 on Contract No. 171728 and to the excess over $660 on Contract No. 175652, since I have allowed no other priority in regard to these two contracts.
The long and short of my decision is that the claims of the defendants Jet, Smythe, Castelento, Mazella and Nemser are subordinate to the lien of the United States, that the lien of the defendant New Amsterdam (limited to the funds arising out of the basic contracts referred to) has priority thereto; that the validity of the plaintiff’s assignments as well as its status and rights if the assignments are invalidated must be determined after a trial of the issues; that the defendant Franklin vis-a-vis the Government is entitled to priority as a mechanic’s lienor to the extent of $1,258.68, plus interest, with respect to Contract *550 No. 170235, but that the question as to the relative priority of the claims of the plaintiff and Franklin in regard to the balance owing on Contract No. 170235 must also await the results of trial. The United States is further entitled to any balances owing Iser by the city on Contract No. 170447 and Contract No. 172094 and to the excess over $1,500, plus interest, on Contract No, 172819. In respect of the rights of the remaining lienors and assignees as against each other, the order of priority is determined by the order of filing liens and assignments (Lien Law, § 25; see, also, Lee v. Bailey Corp., 267 N. Y. 161). Since competing lienors having specific and perfected liens are entitled to precedence under the rule that “ first in time is first in right ’ the judgment to be entered herein will contain a provision that after the payment in full (principal and appropriate interest) of the respective primary liens, and, in the event of any balance remaining, application may be made at the foot of the judgment by any interested party, upon due notice to all the parties herein, for a determination as to their respective rights in the premises.
The motion by the plaintiff for summary judgment is, therefore, denied, and the cross motion of the defendant United States for partial summary judgment is granted to the extent herein specified, and a declaration of rights is decreed accordingly. Settle order and judgment reciting all the papers on file on the original motion and on the application for reargument.

. The present decision is made on reargument, granted sua sponte by the court in a memorandum from which I quote as follows: “ The case of Aquilino v. United States of America (3 N Y 2d 511) was cited to me by one of the several parties in the instant matter, and I relied upon it in rendering my decision herein. However, between the date of the submission of the motions to me and the date of the filing of my decision thereon, the judgment of the [New York] Court of Appeals in Aquilino had been vacated and the case remanded by the Supreme Court of the United States to the Court of Appeals (363 U. S. 509). The opinion (of what was in effect a reversal in respect of a crucial issue) had not yet been published in the reports, the then current Shepard’s citations did not disclose the determination, and none of the parties informed me thereof while this matter was sub judice before me, notwithstanding that at least two of them were aware of it.
In the circumstances, my prior decision is withdrawn, with no further comment than to quote Lord Chancellor Birkenhead : “ ‘ It was not, of course, in cases of complication possible for their Lordships to be aware of all the authorities, statutory or other, which might be relevant to the issues requiring decision in the particular ease. Their Lordships were therefore very much in the hands of counsel and those who instructed counsel in these matters, and the House expected, and indeed insisted, that authorities which bore one way or the other upon the matters under debate should be brought to the attention of their Lordships by those who were aware of those authorities. That observation was irrespective of whether or not the particular authority assisted the party which was aware of it. It was an obligation of confidence between their Lordships and all those who assisted in the debates in this House in the capacity of counsel.’ (Glebe Sugar Refining Company, Ltd. v. Trustees of Port and Harbours of Greenock, [1921] 2 A. C. 66, 68 [fully reported in 1921 W. N. 86]).”
Upon the reargument, request was made by counsel for leave to submit additional proof by way of document, stipulation and affidavit. This request was granted.

. It may be thought that the Law Revision Commission, in its 1959 Report, takes a contrary view, for there the commission stated that “an action by the trustee for such relief [by way of proceedings for the settlement of the trust] is made an exception to the rule (now provided in [old] section 75) that the action cannot be maintained if commenced more than one year after completion of the improvement.” (1949 Report of N. Y. Law. Rev. Comm., p. 223; N. Y. Legis. Doe., 1959, No. 65[F], p. 39.) However, in my view, this language is somewhat ambiguous and, in any event, does not discourage me from holding, as I do, that the trust continues even after the one-year period, and until — as I have hereinbefore noted — “the claims of subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement” have been paid (Lien Law, former § 25-a), so that the legislative intent may be carried out “to protect those whose skill, labor and materials made possible the performance of a construction contract and who in fact, creating the improvement, actually gave rise to the owner’s obligation to pay” (Aquilino v. United States of America, 10 N Y 2d 271. 278-279, supra).

. Under Contract No. 172819, the sole beneficiary subcontractor is the plaintiff. Under Contracts Nos. 171728 and 175652, the sole beneficiary subcontractor is the defendant New Amsterdam.
It seems to me that where there is only one beneficiary under the statute and the contract, and that beneficiary is a party to an action such as this, and where the owner and the trustee are also parties thereto, to require the institution of a representative action is to exalt form in a situation where substance is not aided by abiding by form.

. The only statement I have been able to find on this subject in the voluminous motion papers — pro and con — submitted to me is on page 4 of the letter, dated September 13, 1960, from the United States Attorney to the court (a copy of which letter was transmitted to all attorneys appearing in this action), and which statement reads as follows: “Contracts number 170235 and 172819 which, as has been indicated, are the only contracts to which § 25-a can possibly apply, were completed on May 11, 1955 and July 25, 1955 respectively, more than one year before this action was commenced.” This letter is attached to and made a part of the papers on the motion in opposition to the reargument (Motion No. 78 of Feb. 15, 1961). It is not disputed that the assignments were made on September 27, 1955.