The **FLINTKOTE COMPANY**, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

**UNITED STATES** of America, on its behalf and on behalf of all other persons similarly situated, Third-Party Plaintiffs

v.

**GATEWAY CONSTRUCTION CORPORATION**, Westchester Wallboard Corporation and the Flintkote Company, Third-Party Defendants.

No. 68 Civ. 1634.

United States District Court
S. D. New York.
Feb. 18, 1969.

Herbert G. Kreisberg, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., for Southern District of New York, by Samuel M. Eisenstat, Asst. U. S. Atty., for the United States of America.

Sidney S. Bobbe, New York City, for Gateway Const. Corporation. · ·

MANSFIELD, District Judge.

This action, which was removed from the New York County Supreme Court, seeks a declaration that certain tax liens asserted by the Government, defendant and third-party plaintiff, against third-party defendant Westchester Wallboard Corporation ("Westchester") do not attach to monies owed by third-party defendant Gateway Construction Corporation ("Gateway") to plaintiff, The Flintkote Company ("Flintkote"). The Government, by way of a counterclaim and third-party complaint against Gateway, Westchester and Flintkote, sought to impose a trust under Article 3–A of the Lien Law of New York (Lien Law, McKinney's Consol.Laws, c. 33, §§ 70–79-a), to set aside certain payments made by Gateway to Flintkote on the ground that said payments were diversions of trust assets, and to compel an accounting on the part of Gateway.

Flintkote now moves, pursuant to Rule 56, F.R.Civ.P., for summary judgment granting the relief requested in its complaint and dismissing the third-party complaint on the grounds that there is no defense to plaintiff's cause of action and that the third-party complaint is untimely and fails to state a claim upon which relief can be granted. Third-party defendant Gateway has also moved for summary judgment dismissing the third-party complaint as against it on the same ground proposed by Flintkote's motion.

The following facts are not in dispute. On May 4, 1964 Gateway, a general contractor engaged in the building of an apartment house in Yonkers, New York, subcontracted to Westchester the installation of "Drywall" work in the apartment house. Simultaneously Flintkote agreed with Westchester to finance its performance of the subcontract by advancing to it monies required by Westchester to meet its payrolls and purchase materials for performance of its subcontract with Gateway. Simultaneously Westchester assigned to Flintkote all its right, title and interest in that contract. Gateway accepted the assignment and agreed to pay directly to Flintkote all monies due Westchester under its subcontract with Gateway. Flintkote, on receipt of said payments, was to apply them to Westchester's account as payment for interest, materials and payroll advances, with any balance to be remitted to Westchester.

Pursuant to these arrangements Westchester performed its contract with Gateway and Flintkote supplied the materials and advanced cash to Westchester and received payments from Gateway on the assigned Gateway-Westchester contract.

In the meantime Westchester failed to pay to the Government certain payroll taxes generated by its work for Gateway. The Government then made tax assessments against Westchester totaling $8,540.80, and liens and levies were filed. Notices of levy under the tax liens were served on Gateway on October 29, 1964 and November 12, 1964. Disputes between the parties followed, culminating in a suit in the New York Supreme Court, Westchester County, by Gateway against Westchester, Flintkote, the United States and the Rubberoid Company. The second cause of action of that suit sought, in part, a declaratory judgment that claims asserted by the two latter defendants (United States

and Rubberoid) against funds due to Westchester from Gateway were invalid, but Rubberoid was never served and the action was discontinued as to the Government, without prejudice. In that suit, however, Flintkote brought a counterclaim against Gateway alleging that Gateway owed Flintkote $51,143.78 and interest predicated upon the assigned Gateway-Westchester contract, and a cross-claim against Westchester for monies owed under the aforementioned Flintkote-Westchester contract and a guaranty that was not related to their agreements in this commercial endeavor.

On September 12, 1966, Flintkote entered a judgment by default against Westchester on Flintkote's cross-claim for monies due under their financing agreement and the unrelated guaranty. No part of the default judgment has been paid and due to Westchester's insolvency it is uncollectible. On March 31, 1967 Flintkote and Gateway entered into a settlement agreement and withdrew their pleadings against each other in the Westchester County action. That settlement provided that Gateway would pay Flintkote $30,000, $10,000 of which was to be held in escrow until the rights of the United States, pursuant to its tax claims, could be determined.

As noted at the outset, in the suit removed to this Court Flintkote sought a declaratory judgment that the notices of tax liens and notices of levy thereunder do not apply to any part of the settlement money paid by Gateway. The Government's response, and only asserted defense, has been its counterclaim and third-party complaint brought under Article 3–A of New York's Lien Law. The Government argues that the motion for summary judgment should be denied not only because there are issues of fact to be resolved but also because, even assuming that there are no issues of fact, the Government has a right to interpose its third-party complaint and counterclaim.

The only asserted genuine issue of fact pointed to by the Government is the question of when Westchester finished its work under its contract with Gateway. This fact might be significant with respect to the applicability of the period of limitations contained in Lien Law § 77(2). Movants contend that since the work in question was completed more than a year prior to the time when the Government commenced its Article 3–A Lien Law proceeding by the filing of its third-party complaint on September 12, 1968, the Government's lien is barred. Although the Court, for reasons stated below, does not accept movants' interpretation of the statute, it is clear that regardless which construction is adopted, if the work remained uncompleted within the one-year period, the lien proceeding would not be barred.

■■ The Government has not submitted any affidavits indicating that the work remained uncompleted on September 12, 1967; instead it relies on its statement filed pursuant to Rule 9(g) of the General Rules of this Court to the effect that there is a genuine issue to be tried as to the material fact of "[w]hen the work in question was completed * * *." However, "mere conclusionary affidavits that an issue exists no longer suffice to defeat well grounded motions for summary judgment." Wilson Jones Co. v. Gilbert & Bennett Mfg. Co., 332 F.2d 216, 219 (2d Cir. 1964). A fortiori a conclusionary statement filed pursuant to Rule 9(g) of this Court's General Rules has little, if any, value. On the other hand, movants have not complied with this Court's Rule 9(g) and the evidence they have submitted as to when the work in question was completed is not in conformity with the dictates of Rule 56(e), F.R.C.P. They rely first on an attorney's affidavit to the effect that the work in question was completed in August 1964. Since the affidavit is not based on personal knowledge, however, it is of little value. Second, movants have submitted to the Court an unsigned copy

of a notice of lien purportedly sworn to by Westchester's president, which indicates that the work in question was completed on October 30, 1964. This unsigned document does not set forth facts "admissible in evidence" as required by Rule 56(e). Absent any proof by competent evidence that the work in question was completed more than one year prior to the commencement of the lien proceeding, this Court has no alternative but to find that an essential question of fact is in dispute, and, therefore, to deny these motions.

 Even assuming that the work in question was completed more than one year prior to the commencement of the Government's third-party action, the motions for summary judgment must be denied. Article 3–A of the New York Lien Law provides for the creation of a statutory trust out of the funds received in connection with contracts for the improvement of real property in New York. The purpose of the trust is to provide for the payment of obligations incurred in performing the contract, including tax obligations. See Lien Law § 71. The means for enforcing such a trust are provided in § 77 of the Lien Law, which authorizes the holder of any trust claim to bring a class action to enforce the trust. Movants urge that since the Government did not commence its proceeding until more than a year after completion of the work in question, § 77(2) of the Lien Law calls for dismissal of defendant's counterclaim and third-party complaint. Section 77(2) reads:

"2. Such action may be maintained at any time during the improvement of real property or public improvement and successive actions may be maintained from time to time during the improvement provided no other such action is pending at the time of the commencement thereof. *No such action shall be maintainable if commenced more than one year after the completion of such improvement,* *except an action by the trustee for final settlement of his accounts and for his discharge.*" (Emphasis added.)

Even if the above italicized sentence is construed as a statute of limitations, the one-year limitation would not bar the Government's present third-party complaint and counterclaim, since the United States cannot be barred by a state-imposed procedural limitation, see United States v. 93 Court Corporation, 350 F.2d 386 (2d Cir. 1965), cert. denied, 382 U.S. 984, 86 S.Ct. 560, 15 L.Ed.2d 473 (1966), and this suit is brought well within the six-year period of limitations set for the enforcement of liens by the Internal Revenue Code of 1954 § 6502(a). Movants argue, however, that Lien Law § 77(2) is not a mere statute of limitations but a condition precedent to the enforcement of an Article 3–A trust, and rely on the maxim that

"Generally, where a statute creates a cause of action which was unknown at common law, a period of limitation set up in the same statute is regarded as a matter of substance, limiting the right as well as the remedy." Osbourne v. United States, 164 F.2d 767, 768 (2d Cir. 1947).

As Article 3–A imposes a trust unknown to the common law, so the argument goes, this maxim would require a finding that the § 77(2) limitation was a matter of substance which would be as binding on the United States as it is on private litigants. See Custer v. McCutcheon, 283 U.S. 514, 51 S.Ct. 530, 75 L.Ed. 1239 (1930). We turn, therefore, to consideration of the purpose of this legislative enactment.

In furtherance of the general purpose of Article 3–A, which is to protect those having claims upon funds generated by work in connection with an improvement of real property in New York by providing that such funds shall constitute a trust for the benefit of such claimants, the statute goes on to provide:

"3. Every such trust shall commence at the time when any asset

thereof comes into existence, whether or not there shall be at that time any beneficiary of the trust. The trust of which the owner is trustee shall continue with respect to every asset of the trust until every trust claim arising at any time during the improvement has been paid or discharged, or until all such assets have been applied for the purposes of the trust. The trust of which a contractor or subcontractor is trustee shall continue with respect to every asset of the trust until every trust claim arising at any time prior to the completion of the contract or subcontract has been paid or discharged, or until all such assets have been applied for the purposes of the trust. Upon termination of the trust by payment or discharge of all the trust claims, the beneficial interest in any remaining assets shall vest in the owner, contractor or subcontractor, as the case may be." Lien Law § 70(3).

The foregoing language, when read with the other provisions of the Lien Law, manifests plainly an intent to continue the trust in existence after the expiration of the one-year period fixed in § 77(2), the latter provision being enacted as a means of enabling the trustee to ascertain claims for purpose of distributing the fund. For an analogous construction of a similar statute, see Zuroff v. Westchester Trust Co., 273 N.Y. 200, 7 N.E.2d 100, 109 A.L.R. 1401 (1937).

Equally significant is the fact that under the Lien Law in question the trustee's power to accept or reject claims is not terminated by the statute. He is granted the option to assert the statutory time period as a defense to any claim, thus treating the time period as an affirmative defense in the nature of a statute of limitations rather than a condition precedent to be complied with by the claimant. Thus, a rapid distribution of the assets is to be achieved under the statute not by putting the burden on claimants to assert their claims within a set time period but by permitting the trustee to bring an action "for final settlement of his accounts and for his discharge." Lien Law § 77(2).

The legislative history of § 77(2), though perhaps ambiguous, provides support for the conclusion that it was intended to be a procedural statute of limitations rather than a substantive condition to enforcement of a claim. In reference to the antecedent of the present § 77(2), the 1942 Report of the Law Revision Commission says at p. 285:

"A *procedural* article is proposed to be added to the Lien Law, which provides for the enforcement of the trust by representative action. It also includes * * * a short *period of limitations*. * * *" (Emphasis added.)

Finally, Article 3–A being a creature of New York State law we must pay particular attention to New York decisions interpreting its purpose. In the only New York case we have found which has faced the question herein and dealt with the statute's purpose, Davis & Warshow, Inc. v. Iser Inc., 30 Misc.2d 528, 220 N.Y.S.2d 818 (Sup.Ct.N.Y.Co. 1961), the court held that the time period in Lien Law § 77(2) is a procedural, rather than substantive, defense and consequently not a condition precedent but a statute of limitations. In *Davis* the defendant took the position that the trust terminated at the expiration of the one-year period so that the contractor thereupon had property, or rights in property, in indebtedness owed him by the owner to which a federal tax lien could immediately attach upon the trust's expiration. The court held, however, that the statutory trust could "continue even after the expiration of the one-year period of limitation." Davis & Warshow v. Iser Inc., *supra* at 538, 220 N.Y.S.2d at 829. It relied, in part, on the Law Revision Commission's 1942 Re-

port describing the statute as " 'a short period of limitations' " and said:

"This denotes a procedural defense—which may or may not be affirmatively interposed by an appropriate party in interest, not the government on the basis of a tax lien—rather than a condition precedent to the substantive 'right' of the beneficiary to the 'property' involved * * *." Davis & Warshow v. Iser Inc., *supra* at 533, 220 N.Y.S.2d at 830.

Comparing Article 3-A with other provisions of the Lien Law the court went on to say:

"These trust fund provisions are in sharp contrast to the provisions of the Lien Law giving a lien to persons for work done or materials furnished in respect of the construction or demolition of a public improvement. Such a lien 'shall not continue for a longer period than six months from the time of filing the notice of such lien, unless an action is commenced to foreclose such lien within that time,' and an appropriate notice of the pendency of such action is filed, or unless a court of record orders the lien continued (Lien Law, § 18). Thus, in case of the trust, the statute prevents the *maintenance* of a representative action if not instituted within the prescribed one-year period (Lein Law, § 75), whereas, in case of the lien, the statute *terminates* the lien unless a foreclosure action is commenced within the six-month period or the lien is continued by court order (Lien Law, § 18)." Davis & Warshow v. Iser Inc., 30 Misc.2d 528, 538–539, 220 N.Y.S.2d 818 (Sup.Ct.N.Y.Co.1961).

The above analysis is in accord with the reasoning outlined by New York's Court of Appeals in Zuroff v. Westchester Trust Co., 273 N.Y. 200, 7 N.E.2d 100 (1937), and supports our conclusion that if the trust continues for all purposes after the period of limitations, then that period is only a procedural statute of limitations not binding on the United States.

 Lastly, this Court has once before dealt with the question of whether § 77(2) was a statute of limitations or a condition precedent and, after exploring the statute's legislative history and the reasoning of Davis & Warshow v. Iser Inc., *supra*, concluded that the limitation was a procedural statute of limitations and not a condition precedent. Terns v. Whispell, 227 F.Supp. 498 (S.D.N.Y. 1964). We subscribe to the views asserted in that decision.

Accordingly the Government, not being bound by the State statute of limitations, has properly interposed its third-party complaint and counterclaim and the motions for summary judgment are denied.

It is so ordered.