YONKERS BUILDERS SUPPLY COMPANY, Appellant, *v.* PETRO LUCIANO & SON, INC., et al., Defendants, and GLOBE INDEMNITY COMPANY, Respondent. (Actions Nos. 1 and 2.)

172

(Argued October 10, 1935; decided November 19, 1935 )

*William A. Walsh* and *Joseph J. McCann* for appellant. The appellant did not release and discharge the defendant-respondent by accepting the notes and adjourning the trial of the case. (*Montrose* v. *Baggott,* 161 App. Div. 494; 220 N. Y. 686; *Berger Mfg. Co.* v. *City of New York,* 206 N. Y. 24; *Harley* v. *Plant,* 210 N. Y. 405; *Ringle* v. *Matthiessen,* 10 App. Div. 274; 158 N. Y. 740; *Rukeyser* v. *Fountain & Choate, Inc.,* 185 App. Div. 263.)

*Thomas E. O'Brien* and *Thomas F. Conway* for respondent. The surety, upon the lien cancellation undertakings, was discharged by extensions of time given to the principal debtor without the knowledge or consent of the surety; by the acceptance of the notes and mortgage, and by the acceptance of the various renewal notes. (*Ducker* v. *Rapp,* 67 N. Y. 464; *Murray* v. *Marshall,* 94 N. Y. 611; *National Park Bank* v. *Koehler,* 204 N. Y. 174;

*Montrose* v. *Levenson*, 132 App. Div. 928; *Thomas Motor Branch Co.* v. *U. S. Fidelity & Guaranty Co.*, 153 App. Div. 32; 211 N. Y. 574; *Foo Long* v. *American Surety Co.*, 146 N. Y. 251; *Place* v. *McIlvain*, 38 N. Y. 96; *Brown* v. *Farmers Loan & Trust Co.*, 117 N. Y. 266; *Bangs* v. *Strong*, 7 Hill, 250.) If there is no privity of contract, nor any relationship between the plaintiff and the surety, the plaintiff has no standing to prosecute the action against the surety. (*Aeschlimann* v. *Presbyterian Hospital*, 165 N. Y. 296; *Morton* v. *Tucker*, 145 N. Y. 244; *Smith* v. *City of New York*, 32 Misc. Rep. 380.) Because of failure promptly to correct the exaggerated amount in the first lien filed against the county job, the plaintiff lost the right to enforce the liens against both the county and the State jobs. (*Aeschlimann* v. *Presbyterian Hospital*, 165 N. Y. 296.)

FINCH, J. These are actions to foreclose mechanics' liens.

The defendant Petro Luciano & Son, Inc., entered into a contract with the county of Westchester for the construction of a highway. It also entered into a contract with the State of New York for the construction of a highway. The plaintiff-appellant, the Yonkers Builders Supply Company, furnished cement to the Luciano company for both contracts.

On August 21, 1929, the plaintiff filed a notice of lien against the county contract for the sum of $24,000. The Luciano company thereupon obtained from the Globe Indemnity Company, the respondent herein, an undertaking discharging the lien. No attempt was made to enforce this lien, it being permitted to expire. Subsequently, more cement was furnished and, the contractor having failed to pay in accordance with the terms of the contract, a new lien was filed on September 10, 1929, for approximately $20,000. The verification of this lien proved to be defective and it was refiled on September 30, 1929. A lien against the State contract for more than $6,000 was filed on August 23, 1929. Both of these liens

were discharged by court order upon the filing of an undertaking by the respondent. In January, 1930, these suits were commenced to foreclose the liens.

In the fall of 1930 the Luciano company obtained a new State contract and the plaintiff contracted to supply cement for the work. In the course of the negotiations the question of the last two liens, bonded and sued on as above, was raised and an adjustment was had. It was agreed that the actions were to be adjourned by stipulation and that Petro Luciano & Son, Inc., would give the plaintiff notes for the sum owed, indorsed by the Lucianos individually and secured by a mortgage on property owned by Petro Luciano. The stipulations were signed on November 8, 1930.

The case was reached for trial on November 10th but was adjourned to the 12th, at the request of counsel for the plaintiff. On the 12th it was adjourned again in accordance with the stipulations. The Globe Indemnity Company did not object to the adjournment but it was not apprised of the execution of the notes or mortgage. The adjournment of the trial with the consent of the surety was from November until May. The time of payment of the notes was in February, but the notes were renewed regularly until the plaintiff insisted upon going to trial because of the failure to pay the notes. The Special Term granted judgments against Petro Luciano & Son, Inc., and the Globe Indemnity Company. The Appellate Division reversed on the law and the facts.

The new findings of fact of the Appellate Division must first be considered. The Appellate Division found that the plaintiff was guilty of fraud and was not in court " with clean hands." These findings appear to be based upon a contention by the respondent Globe Indemnity Company that the plaintiff and his attorney entered into a scheme with the principal debtor and Petro Luciano and his wife, the indemnitors to the surety company, the purpose of which was to obtain satisfaction of the plaintiff's claim from the surety company and to relieve the principal debtor and its indemnitors of that burden.

It would unduly lengthen this opinion to review the fact situation. Suffice it to say here that the record does not support the finding of fraud or of unclean hands or inequitable conduct on the part of the plaintiff, even assuming that fraud had been pleaded. It does contain evidence of a number of transactions between the attorney for the plaintiff, the Luciano company and the Lucianos individually, but these transactions took place after the stipulations were agreed to and at a time when the attorney who acted for the plaintiff was employed also by the Lucianos as their own counsel. It is clear that in all these transactions the plaintiff is not involved, the attorney acting solely in his position of counsel to the Lucianos. Furthermore, no fraud or defense of unclean hands was pleaded in the answer of the defendant surety, although the answer was amended at the trial to plead inequitable conduct.

The Appellate Division also found that the plaintiff abandoned the claims upon which these actions are based. The main evidence to support this finding is testimony that the attorney who had originally acted for the plaintiff and thereafter for the contractor, was present when the contractor paid his original attorney for services rendered in connection with several matters, including the lien proceedings, and although it was stated that the latter proceedings were finished, the attorney who had originally acted for the plaintiff did not demur. This did not bind the plaintiff. Neither this nor the other findings referred to by the respondent are adequate to support a finding of abandonment by the plaintiff.

Nor was the indebtedness represented by the liens paid or the liens discharged by the acceptance of the notes and mortgage by the plaintiff. (*Rukeyser* v. *Fountain & Choate, Inc.*, 185 App. Div. 263.)

The respondent further contends that although neither the Special Term nor the Appellate Division have found the plaintiff guilty of exaggerating the amount of the liens, the facts as found clearly show such exaggeration. No

such result follows. The facts found show that the first lien entered was for an amount $10,000 in excess of what was actually owed. This was the result of a mistaken belief on the part of the plaintiff that a check received by it as part payment was not good. Shortly afterward the plaintiff learned of its mistake but nevertheless did not correct the amount. On this ground the respondent rests its contention of exaggeration. This lien, however, was permitted to lapse and it is probable that the amount was not corrected because the plaintiff intended to and did permit the lien to lapse. Inaccuracy in amount of lien, if no exaggeration is intended, does not void a mechanic's lien; willfulness also must be shown. (*Goldberger-Raabin, Inc.*, v. *74 Second Ave. Corp.*, 252 N. Y. 336. See *Aeschlimann* v. *Presbyterian Hospital*, 165 N. Y. 296.) Willfulness on the part of the plaintiff has not been proven, nor does the claimed exaggeration involve a lien now being foreclosed.

The remaining and vital question is whether the plaintiff, by entering into binding stipulations postponing the trial of the actions and taking notes and a mortgage in settlement if paid, discharged the respondent. What follows is not in conflict with the general principle of law that in the ordinary case of suretyship an agreement on the part of the creditor which operates to extend the time of payment of the original debt and suspends the right of action against the principal, discharges the surety, unless he has acquiesced in such extension. (*National Park Bank* v. *Koehler*, 204 N. Y. 174.) This principle does not apply in the case at bar because of the nature of the undertaking here given.

An undertaking given to discharge a lien differs in important particulars from that of the ordinary suretyship. In the first place, it is a substitute, so far as the rights of the lienor are concerned, for the fund or property subject to the lien. In *Harley* v. *Plant* (210 N. Y. 405, at p. 410) this court said: " The undertaking does not change the relation or rights of the parties otherwise than in substituting its obligations for the fund subject to the

lien, and it was not within the legislative purpose in permitting the substitution to deteriorate the lienor's rights." Similarly in *Berger Mfg. Co.* v. *City of New York* (203 N. Y. 24, 30) this court said: "The undertaking does not change the relation and rights of the parties other than to substitute its provisions for the fund remaining due or to become due from the municipality to the contractor."

While in the ordinary case of guaranty or suretyship the creditor for his own benefit seeks and desires the additional security, in the case at bar the undertaking is given for the benefit of those owning the fund or property and against the will of the lienor, who does not desire the discharge of the lien and would prefer to keep the same. The effect and purpose of the undertaking in the case at bar was to release the funds to the defendant contractor and to relieve the public official in the payment of this contractor from the effects of the plaintiff's lien. The amount of the undertaking is determined by the court, and not by the lienor, and where, as here, the undertaking is furnished by a surety company, the lienor lacks the right to compel justification by the surety and is not even entitled to personal service of a copy of the undertaking. When this surety furnished the undertaking herein, it must be presumed to have had knowledge of the precise nature and purpose of the undertaking and that it takes the place of the fund or property subject to the lien. It cannot be contended successfully that once a lien is filed the lienor and the contractor cannot compromise, settle or adjust the claim, or extend the time of payment of the indebtedness between them without the consent of the owner, in the case of a private lien, or the custodian of the fund in the case of a public lien. When an undertaking is substituted and the lien released, the rights of the lienor are not less. (*Harley* v. *Plant*, *supra.*)

It follows that in each action the judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

LEHMAN, J. (concurring). The plaintiff filed notices of liens under contracts for public improvements. The liens attached to moneys of the State or county applicable to the construction of such improvements. (Lien Law [Cons. Laws, ch. 33], § 5.) The statute which created the liens defined their limits and provided the manner in which they might be enforced. By the filing of a notice, the lienor obtained the rights accorded by the statute — no more and no less. Any rights acquired by the filing of a notice of lien upon the moneys which, by the statute, were made subject to the lien, might, from their inception, be discharged or defeated by the filing of an undertaking " conditioned for the payment of any judgment * * * which may be recovered in any action " to foreclose the lien. (§ 37.) Then, by operation of law, even without the consent of the lienor, the obligation of the bond was substituted for the fund which was subject to the lien. The relation and rights of the parties remained otherwise unchanged (*Harley* v. *Plant*, 210 N. Y. 405), but the undertaking brought in a new party, and thus created a new relation involving new rights and obligations. The obligations of the surety, though voluntarily assumed for a valuable consideration, are defined and measured by the statute and the language of the bond. The rights of the lienor are defined and measured in the same manner. A lienor has no choice of whether to enforce a lien upon a fund or to avail himself of the obligations of the undertaking. He may be relegated, even against his will, to an action to enforce the obligation of the undertaking; but if he seeks to avail himself of the benefit of the statutory undertaking, he subjects himself to any limitation upon his rights, express or implicit, in the terms of the undertaking. Thus both the rights of the lienor and the correlative obligation of the surety are in all cases determined by the statutory undertaking.

The obligation of the surety company is one of suretyship. Correlative rights and obligations arise from that relationship. They may not be cast aside because the surety receives compensation or because the relationship has been thrust by statute upon the lienor. It is often said that a creditor discharges a surety by any dealing or arrangement with the principal debtor without the surety's assent, which at all varies the situation or rights of the parties. (1 Brandt on The Law of Suretyship and Guaranty, § 255.) Accordingly the rule is well established that " when the obligation of the surety is for the debt of the principal, if the time of payment is without the consent of the surety, by a binding agreement between the creditor and the principal, extended for a definite time, the surety is discharged. The reason is that the surety is bound only by the terms of his written contract, and if those are varied without his consent it is no longer his contract and he is not bound by it." (Id. § 376.) These tests must be applied here, but even so, I reach the same conclusion as Judge FINCH that the surety is left without a valid defense.

The time at which a debt is payable constitutes one of the terms of the debt itself. A binding agreement with the debtor extending the time for payment alters the risk assumed by a surety for the payment of that debt. Except for such extension, the surety might at any time pay the debt and compel reimbursement from the principal. The obligation of the surety cannot be altered without the surety's consent to cover a risk without such safeguard. Here the surety did not guarantee payment of the debt of the principal. Its obligation was confined to the payment of a judgment recovered in an action to foreclose a lien. No such judgment could be recovered if the lien was defective, yet the debt might still remain in existence and be collectible by action at law. The defendant thus agreed to pay not an existing debt, payable then or at some time in the future, but to pay a judgment which might never come into existence. How or when or in what amount such a judgment would be

obtained was then undetermined, and the surety had no right to object to any fair and honest agreement between the parties intended to govern such matters.

The surety is not a necessary party to an action to foreclose the lien, yet a " judgment therein establishing that the lien when discharged by the undertaking was valid and enforceable in a fixed amount is conclusive as an adjudication in an action upon the undertaking against the sureties, although they were not parties to the former action." (*Harley* v. *Plant, supra*, p. 410.) The giving of the undertaking in no way altered the right and power of the lienor to control the action to foreclose the lien. That remained as before, and when the lienor chose, for its own benefit but without bad faith, to enter into an agreement with its debtor to adjourn the trial for a definite time pending consummation of a settlement, it merely exercised rights which belonged to it and which it never abandoned. The surety's risk and its liability are not increased by exercise of a right by a creditor which the parties must have understood the creditor retained. Concededly, a judgment has been recovered in an action brought to foreclose a lien, as stipulated in the bond. There was no stipulation in the bond which expressly or by implication restricted the plaintiff in its control of the foreclosure action. The plaintiff has proceeded in manner permitted by law.

Judgment should be reversed.

CRANE, Ch. J., O'BRIEN, CROUCH and LOUGHRAN, JJ., concur with FINCH, J.; LEHMAN, J., concurs in separate opinion, in which all concur; HUBBS, J., not sitting.

Judgment accordingly.