NORTHERN STRUCTURES, INC., on Behalf of Itself and All Other Creditors Similarly Situtated, Respondent, v UNION BANK, Appellant.

Fourth Department, May 20, 1977

*Walsh & Levine (Raymond Fersko* of counsel), for appellant.

*Francis X. Murphy* for respondent.

*Michael R. Griffinger* for Eugene L. Boyle, *amicus curiae.*

CARDAMONE, J. The action underlying this appeal was commenced on October 13, 1967 by plaintiff, Northern Structures, Inc., against defendant, Union Bank, pursuant to article 3-A of the New York Lien Law to recover statutory trust funds in the amount of $54,498.05 allegedly diverted by Union Bank.

The facts are as follows. In 1965 Imperial 400 National, Inc., a Delaware corporation involved in motel financing and construction, began construction of a motel in Buffalo, New York. Imperial's local partners were Dr. Robert and Roberta Fisher. The co-owner operator agreement between Imperial and the Fishers gave the Fishers a 50% interest in both the motel and the 35-year lease of the motel site upon the completion of the construction. In connection with the construction of the motel, Imperial received a construction mortgage advance of approximately $135,000 from the Liberty Bank and Trust Company of Buffalo under a mortgage given to Liberty in April, 1965 for $375,000. A portion of this advance ($67,494) was deposited by Imperial in the Franklin National Bank of New York. On June 1, 1965 Imperial deposited $54,498.05 of the proceeds of the same mortgage advance in a checking account at Union Bank in California entitled "Imperial 400 National, Inc.—Real Estate Investment Account". The deposit and check for $54,498.05 were endorsed in blank by Bernard Whitney, Imperial's president.

On June 3, 1965 Imperial filed a voluntary petition for an arrangement under chapter XI of the Bankruptcy Act in the United States District Court for the District of New Jersey. On June 4, 1965 Union Bank set off the funds in the Imperial checking account including the June 1 deposit of $54,498.05, against approximately $500,000 in unsecured overdue loans to Imperial. Thereafter, several subcontractors who worked on the Buffalo motel construction filed notices of mechanics' liens

amounting to over $130,000 against the motel property. In 1966 the Fishers, doing business as 1159 Main Street Corporation, and Benderson Development Corporation petitioned the New Jersey reorganization court for a settlement of their claims against Imperial. On June 6, 1966 the reorganization court authorized Imperial's trustee to execute an assignment of Imperial's total interest in the motel site and leasehold to the Fishers in consideration of a general release by the Fishers of all claims against Imperial, an assumption of the construction mortgage, and provision for the payment of mechanics' liens. On July 25, 1966 the Fishers posted a $125,000 bond and an order was entered discharging the mechanics' liens against their property.

On October 13, 1967 Northern Structures, Inc., a subcontractor on the Buffalo motel, commenced the instant action against Union Bank and Franklin National Bank of New York on behalf of itself and all other unpaid contractors and materialmen under article 3-A of the Lien Law, seeking to recover the trust funds allegedly diverted by the banks. On June 1, 1965 Franklin had also set off Imperial's checking account balance of $126,741 against existing debts. The subcontractors claimed that $67,494 of Franklin's setoff was part of the construction mortgage advance. Upon plaintiff's motion, the claim against Franklin was severed, as Franklin moved for and obtained an order transferring the action against it to Nassau County pursuant to section 94 of title 12 of the United States Code.

The subcontractors then prosecuted their liens in a separate foreclosure action against the Fishers which was settled in 1968. 1159 Main Street Corporation and Benderson agreed to pay the contractors and materialmen 90 cents on the dollar in exchange for an assignment of their claims. Upon such settlement and assignments, 1159 Main Street Corporation became the real party in interest in the instant action.

The summons and complaint were delivered personally to Union Bank, in California, on October 13, 1967. The complaint alleged that Imperial received $135,000 from Liberty as an advance on a construction loan; that this payment was a statutory trust under article 3-A of the Lien Law; that Imperial was the trustee of such funds; that, of these funds, Franklin Bank diverted $67,494 with knowledge of their trust nature; that a further amount of $54,498.05 of said trust funds was paid to Union Bank; that Union Bank received this

amount knowing that it was trust money; and that Imperial's president was a knowing participant in the alleged diversion to Union Bank.

Union Bank moved unsuccessfully to dismiss the complaint for (1) lack of jurisdiction; (2) failure to state a cause of action; and (3) failure to bring the action within the one-year Statute of Limitations imposed by section 77 of the Lien Law.

A trial commenced on February 10, 1975 following which the trial court determined (1) that the complaint stated a cause of action; (2) that the action was timely; and (3) that Union Bank knew the nature of the funds transferred and, accordingly, rendered judgment in favor of plaintiff-respondent.

Union thereafter moved to vacate the decision on the ground that there was no evidence which would support the trial court's conclusion with respect to the bank's knowledge. This motion was denied. Plaintiff's counsel's motion for an additional allowance pursuant to CPLR 8303 was granted at the same time and Union Bank filed its notice of appeal from the judgment and these two orders on July 22, 1976. Enforcement of the judgment was stayed by this court on July 23, 1976.

Thereafter, Union Bank's appellate counsel learned that Northern Structure's action against Franklin Bank had been settled after trial of the instant action, but before judgment. Union Bank moved to reduce the judgment below pursuant to subdivision (a) of section 15-108 of the General Obligations Law. This motion was denied on the ground that the statute was inapplicable. Union Bank has also appealed from this order.

On this appeal Union Bank contends that the trial court improperly exercised long-arm jurisdiction over it; that it cannot be charged with knowledge of the character of the check when there was no instruction with regard to its construction mortgage nature; that even if it knew of the construction mortgage character it cannot be charged with knowledge of the New York statute bestowing trust status upon such funds; that section 71 (subd 3, par [c]) of the Lien Law bars the successor owner from asserting the assigned article 3-A trust claims; that the instant action is barred by the one-year Statute of Limitations contained in subdivision 2 of section 77 of the Lien Law; that the trial court erred in allowing prejudgment interest; that the trial court abused its

discretion in granting an additional cost allowance pursuant to CPLR 8303 (subd [a], par 2) and that subdivision (a) of section 15-108 of the General Obligations Law precludes a judgment against a nonsettling defendant.

We discuss appellant's contentions seriatim.

With respect to the exercise of long-arm jurisdiction over appellant Union Bank of California, we note initially that it did not waive its jurisdictional objection by abandoning its appeal from Special Term's order denying its motion to dismiss pursuant to CPLR 3211 subd [a], since it subsequently asserted the jurisdictional objection in its answer (CPLR 5501, subd [a], par 1).

The trial court sustained jurisdiction under CPLR 302 (subd [a], par 3, cl [ii]). To confer jurisdiction on the court over a nonresident defendant under CPLR 302 [subd [a], par 3) the tortious act without the State must cause injury to person or property within the State. The question is whether the alleged tortious act committed by the conversion of trust funds in California caused injury in New York. Concededly there is authority in New York that an out-of-State conversion of trust funds which would reasonably be expected to have consequences in New York satisfies the jurisdictional requirements of CPLR 302 (subd [a], par 3, cl[ii]) *(Tonelli v Chase Manhattan Bank,* 49 AD2d 731). Authority also exists that in cases involving the tort of conversion the injury must be deemed to occur in the place where the defendant's acts respecting the property are committed *(Chemical Bank v World Hockey Assn.,* 403 F Supp 1374, 1380; *Friedr. Zoellner [N. Y.] Corp. v Tex Metals Co.,* 396 F2d 300, 303). Thus, under the latter cases cited the injury must be deemed to have occurred outside of New York and the mere fact that plaintiffs are located in and experienced financial consequences in New York is not a sufficient basis for jurisdiction under CPLR 302 (subd [a], par 3, cl [ii]) *(Lehigh Val. Inds. v Birenbaum,* 527 F2d 87, 94; *Security Nat. Bank v Ubex Corp.,* 404 F Supp 471). We find as a matter of fact that Union Bank transacted business within New York and that from the transaction of that business the instant cause of action arose. We conclude that the requirements of CPLR 302 (subd [a], par 1) are met and therefore we need not reach the question of whether the requirements of CPLR 302 (subd [a], par 3, cl [ii]) have also been satisfied.

Mr. Baltzer, an officer in Union Bank's loan adjustment

department, made trips to New York on May 28, 1965 and June 2, 1965 in order to negotiate with Imperial concerning Imperial's request for an additional loan of $400,000 and Union Bank's desire to negotiate additional financing on its outstanding loans to Imperial. As documented by Mr. Baltzer's recommendations and analysis, Union Bank and Imperial's other financial creditors entered into an agreement which was subsequently approved in principle by Imperial. The actual setoff of the funds deposited in Union Bank occurred in California. However, Imperial's decision to file for reorganization under chapter XI of the Bankruptcy Act and Union Bank's decision to set off the deposit were the product of the failure of Union Bank and Imperial to reach an agreement in New York as to additional security for the present debt and commitment for future advances.

While there is no fixed standard as to the minimum contacts required to constitute the transaction of business under CPLR 302 (subd [a], par 1), what is required is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" (Hanson v Denckla, 357 US 235, 253; McKee Elec. Co. v Rauland-Borg Corp., 20 NY2d 377, 382). Although casual physical presence will not suffice to establish jurisdiction, a single transaction in New York, out of which plaintiff's cause of action arises may satisfy the statute so long as the transaction was a purposeful one (Parke-Bernet Galleries v Franklyn, 26 NY2d 13; Longines-Wittnauer v Barnes & Reinecke, 15 NY2d 443, 456). The fact that defendant transacts business in New York is not sufficient, by itself, to satisfy the requirements of CPLR 302 (subd [a], par 1); it must also be shown that the cause of action asserted arose out of the defendant's activities in this State (Frummer v Hilton Hotels Int., 19 NY2d 533). We find that defendant by negotiating with and coming to an agreement with Imperial and its other creditors purposely availed itself of the privilege of conducting activities within New York and Union Bank's decision to set off the deposit was a result of those purposeful activities. Since the instant cause of action resulted from Union Bank's activities in New York, it is appropriate for the courts of New York to entertain long-arm jurisdiction over this nondomiciliary bank under CPLR 302 (subd [a], par 1).

We next turn to the question of whether Union Bank had

notice prior to its setoff on June 4, 1965 that Imperial's June 1, 1965 deposit consisted of the proceeds of a construction mortgage advance which were the subject of a statutory trust under the Lien Law of New York. The trial court found that "[i]t is obvious that the defendant Union Bank had knowledge of the nature of the funds transferred, prior to the transfer. Numerous conversations and memoranda between various bank officials which were introduced into evidence illustrate that fact. Therefore, the defendant must be held responsible for the diversion". We agree.

While there was no special designation of Imperial's account which would inform Union Bank of the trust nature of this deposit made into it, we find that Union Bank had actual and constructive knowledge that the deposit was of a trust nature. We reach this conclusion because the record reveals that Union Bank's agents knew the nature of Imperial's business and were aware that one method of financing was to borrow from banks to make progress payments as the construction work is completed. Union Bank's agent also knew that Imperial anticipated receiving a $135,000 construction advance for the Buffalo project in May, 1965. Further, Union Bank and Franklin National Bank had an informal arrangement, as evidenced by correspondence between the bank's officers, to share significant information concerining Imperial's financial position and co-ordinate their actions to insure Imperial's repayment of pre-existing debts. On June 1, 1965 Franklin National Bank received a telegram from Imperial warning it of the consequences of the setoff and informing Franklin National Bank that the deposit consisted of trust funds. Because of the informal arrangement between the banks to share significant information with respect to Imperial's finances, and since the banks' agents met in New York on June 2, 1965 after Franklin received the telegram, the evidence is compelling that Union had knowledge of the trust nature of the June 1, 1965 deposit.

We now consider the contention of Union Bank and Imperial's trustee in bankruptcy that 1159 Main Street Corporation is barred by section 71 (subd 3, par [c]) of the Lien Law from asserting the assigned claims of the subcontractors. Appellant asserts that 1159 Main Street Corporation is a trustee who acquired the subcontractor's claims by assignment and therefore the claims have ceased to be trust claims. It claims that article 3-A of the Lien Law is for the protection of laborers

and materialmen and not for the benefit of property owners. Further, Union Bank asserts that it would constitute unjust enrichment to allow 1159 Main Street Corporation to profit on its assumption agreement with Imperial since the parties intended that the motel site and lease would alone provide the compensation to the new owners for their agreement to satisfy the mortgage and liens arising from the construction. We cannot agree with these contentions.

The statutory trust was not discharged when 1159 Main Street Corporation paid the trust claims and received assignments from the subcontractors and materialmen (Lien Law, § 77, subd 1; see *Caristo Constr. Corp. v Diners Fin. Corp.*, 21 NY2d 507; *National Sur. Corp. v Fishkill Nat. Bank*, 61 Misc 2d 579, affd 37 AD2d 537). Appellant's reliance upon section 71 (subd 3, par [c]) of the Lien Law is misplaced. 1159 Main Street Corporation received the assignment of the claims of the laborers and materialmen in exchange for payment of Imperial's outstanding debts. Under these circumstances the general rule governing the assignment of such claims applies and 1159 Main Street Corporation may prosecute the claims as if standing in the shoes of the laborers and materialmen.

Subdivision 2 of section 77 of the Lien Law provides that no action to enforce a trust "shall be maintainable if commenced more than one year after the completion of" the improvement of real property. The physical work on the Buffalo motel was discontinued in 1965 because of Imperial's insolvency. Thereafter a 50% stockholder in 1159 Main Street Corporation undertook to complete the motel and the motel was opened on October 21, 1966 when it was 90% complete. The question of when construction is completed is a question of fact. The one-year period does not begin to run from the date of substantial completion, but from the date of completion of all work *(Ingalls Iron Works Co. v Fehlhaber Corp.*, 327 F Supp 272; *Utica Sheet Metal Corp. v Myers-Laine Corp.*, 45 AD2d 116). Inasmuch as the instant action was commenced on October 13, 1967, it was timely under subdivision 2 of section 77 of the Lien Law.

Predecision interest of $35,432.69 was improperly awarded. Trust claims pursuant to article 3-A of the Lien Law are allowed only for the "cost of improvement" (Lien Law, § 71, subd 1). There is no provision for the award of interest in subdivision 1 of section 71 of the Lien Law. The definition of

"cost of improvement" does not include interest except on prior existing mortgages and building loan mortgages (Lien Law, § 2, subd 5). The grant of predecision interest has been denied in actions of the recovery of a diversion of trust funds ·by an owner *(Gruenberg v United States,* 29 AD2d 527) as well as in an action by a surety against a bank for diversion of trust funds *(St. Paul Fire & Mar. Ins. Co. v New Jersey Bank & Trust Co.,* 137 NJ Super 294, cert den 59 NJ 265). The policy of this State as contained in article 3-A of the Lien Law is to give preferred trust protection to the original "cost of improvement" as limited by the definition of that phrase. Generally, interest lawfully accrues on an unpaid liquidated claim as a part of the whole of such claim. However, in view of the special language of article 3-A and the policy underlying the Lien Law, the award of predecision interest in this case should be vacated *(Gruenberg v United States, supra).*

The trial court's award of $3,000 to plaintiff pursuant to CPLR 8303 (subd [a], par 2) which provides for the discretionary award of an additional allowance "to any party to a difficult or extraordinary case, where a defense has been interposed" was proper. In view of the fact that more than 90 exhibits were presented and extensive pretrial preparation was involved in this litigation which extended over a period of nearly 10 years, we find no abuse of discretion in the award of an additional allowance.

Finally, we find that subdivision (a) of section 15-108 of the General Obligations Law has no application to this case. There were two separate injuries resulting from Franklin Bank's setoff of $67,494 and Union Bank's setoff of $54,498.05. The setoffs occurred on different dates and each represented a separate and distinct breach of trust. The settlement of plaintiff's claim against Franklin Bank arising out of a distinct and separate setoff can have no effect upon the instant judgment.

The judgment should be modified by vacating the award of predecision interest and, as modified, it and the orders appealed from should be affirmed.

MOULE, J. P., SIMONS, DILLON and WITMER, JJ., concur.

Judgment unanimously modified in accordance with opinion by CARDAMONE, J., and, as modified, judgment and orders affirmed, without costs.