TITAN INDEMNITY COMPANY,
Plaintiff–Appellant,

v.

The **TRIBOROUGH BRIDGE AND TUN-
NEL AUTHORITY, INC.,** Quadrozzi
Equipment Leasing Corp., Quadrozzi
Concrete Corp. and Helen Carr Corp.,
Defendants,

Internal Revenue Service and NYS Dept.
of Labor, Defendants–Appellees,

No. 81, Docket 96–6299.

United States Court of Appeals,
Second Circuit.

Argued Aug. 27, 1997.

Decided Jan. 26, 1998.

Neil B. Connelly, Kroll & Tract, New York City, for plaintiff–appellant.

Jeffrey S. Oestericher, Assistant United States Attorney, Southern District of New York, New York City, for defendant–appellee Internal Revenue Service.

Patricia Smith, Assistant Attorney General for the State of New York, New York City, for defendant–appellee New York State Department of Labor.

Before: KEARSE and McLAUGHLIN, Circuit Judges, and TRAGER, District Judge.[*]

McLAUGHLIN, Circuit Judge:

Titan Indemnity Company appeals from a judgment of the United States District Court for the Southern District of New York (McKenna, J.) determining competing claims to the proceeds of a public improvement contract. We reject all of Titan's arguments, and affirm the district court.

## BACKGROUND

On October 26, 1990, D.H. Farney Contractors, Inc. ("Farney") entered into a contract with the Triborough Bridge and Tunnel Authority ("TBTA") to repair both the Triborough Bridge and the Verrazano Narrows Bridge ("TBTA Project"). The contract required Farney to get performance and payment bonds from a surety company. Accordingly, Titan Indemnity Company ("Titan"), a Texas corporation licensed to write surety bonds in New York, issued the customary performance bond and a labor and material payment bond on behalf of Farney. On or about November 15, 1990, Farney commenced work.

In the fall of 1991, Farney stopped working on the TBTA project; and sometime thereafter Farney was declared in default of its contract obligations. At this time, TBTA held a fund of $97,601.88 that it admittedly owed Farney for its work ("Contract Fund").

The Contract Fund lies at the vortex of this litigation. TBTA withheld $91,153.90 pursuant to liens, levies, and restraining orders, including $21,495.65 withheld pursuant to a "notice to withhold" from the New York Department of Labor (N.Y.DOL). The remaining $6,447.98 was withheld as "contract retainage," that is, money withheld from each contract payment as security for future performance.

After default, TBTA demanded that Titan complete the project. Titan and TBTA entered into a completion agreement, whereby Titan hired another company as a completion contractor to finish the job. The repairs were then completed, and on June 8, 1994, the TBTA issued its final certificate of completion.

All the while, the TBTA continued to hold the $97,601.88 Contract Fund. Five creditors made claim to this money—(1) the IRS demanded $16,721.39 for income and FICA taxes that had been withheld on behalf of Farney employees who had worked on the project; (2) the New York State Department of Labor (N.Y.DOL) had issued a notice to withhold $48,450, pursuant to § 220–b of New York Labor Law, which represented its estimate of Farney's liability, including wages, interest, and penalties for failure to pay two of its employees the prevailing wage rate under New York law; (3) Quadrozzi Concrete Corp. and Quadrozzi Equipment Leasing Corp. ("Quadrozzi") sought $3,458.30 for concrete and other materials provided to Farney for the TBTA project; (4) Helen Carr Construction Corp. asserted a claim arising from an unrelated judgment against Farney on another project; and (5) Titan, the surety, claimed the lion's share including $90,350, the amount it had to pay to complete the project, giving TBTA appro-

---

[*] The Honorable David G. Trager of the United States District Court for the Eastern District of New York, sitting by designation.

priate credit for the amounts TBTA had already paid Titan.

*The Lawsuit*

In March 1994, Titan sued in the Supreme Court of the State of New York seeking a determination of the parties' rights in, and distribution of, the Contract Fund. The TBTA filed an answer and an interpleader claim admitting that it had the Contract Fund and seeking to deposit it with the court pending adjudication of the parties' claims. As a disinterested stakeholder, the TBTA made no claim to the Contract Fund.

The IRS removed the action to the United States District Court for the Southern District of New York (McKenna, *J.*) and all the parties moved for summary judgment. Granting some of the motions and denying others, the district court made the pivotal ruling that the Contract Fund was a trust fund under section 70 of Article 3–A of the New York Lien Law ("3–A trust fund"). As such, said the court, the order of priority for claims against the fund is set forth in Lien Law, Article 3–A, section 77. Accordingly, the court determined that the IRS' claim for taxes arising from the TBTA project received first priority.

While no one disputes that the Contract Fund is an Article 3–A trust fund, it is not as simple as all that. As the district court noted, New York has introduced into the calculus the paradoxical notion of "super-priority," which means that certain claims jump to the head of the line and are deducted from the Fund *before* the priority of the other liens is even evaluated. The district court determined that under New York law some of NYDOL's claims earned "super-priority" status and, consequently, were deducted from the $97,601.88 Contract Fund before the other creditors even lined up.

NYDOL's claim ultimately consisted of three parts: (1) $22,931.50 in back wages owed because Farney failed to pay an employee the prevailing wage rate under New York law; (2) $9,174.22 in interest due on those back wages; and (3) a 25% penalty assessed for Farney's failure to pay the prevailing wage rate. The district court ruled that the wages owed and actually withheld by TBTA pursuant to NYDOL's withholding no-

tice "are properly deducted from the funds retained by the [TBTA] before they form the corpus of [the] 3–A trust." Those wage funds, the district court determined, were entitled to a "super-priority" under section 220–b of the New York Labor. Accordingly, because the money TBTA actually withheld pursuant to NYDOL's withholding notice amounted to $21,495.65, the district court granted NYDOL a "super-priority" for that sum.

The remainder of NYDOL's claim—$10,-610.67 in remaining back wages and interest, and the 25% penalty—was determined *not* to enjoy this "super-priority." Rather, the court determined that the remaining back wages and interest constituted an Article 3–A trust claim entitled to second priority after the IRS's tax claim. NYDOL's 25% penalty claim was not considered an Article 3–A trust claim at all.

Quadrozzi's claim for payment for materials was treated as an Article 3–A trust claim and awarded third priority. All the remaining funds were awarded to Titan as surety.

The claims of Helen Carr Corp. and the penalty portion of the NYDOL's claim were granted nothing, the court concluding that those claims did not constitute trust beneficiary claims under Article 3–A of the New York Lien Law. The district court determined that NYDOL, insofar as its claim for the penalty, and Helen Carr would have to pursue their claims against Farney independently of this action.

The following, therefore was the ultimate priority and distribution fixed by the district court:

| | | |
|---|---|---|
| A. | $21,495.65 | NYDOL super-priority (money withheld pursuant to notice) |
| | * * * * | |
| 1. | $16,721.39 | IRS |
| 2. | $10,610.07 | NYDOL (remainder of back wages and interest claim not covered by money withheld) |
| 3. | $ 3,458.30 | Quadrozzi |
| 4. | $45,316.47 | Titan (remainder after above claims satisfied) |
| Total: | $97,601.88 | |

Titan appeals, arguing that the district court erred: (1) by according priority to the trust fund beneficiaries over Titan's suretyship claim; (2) by according NYDOL's claim

priority over Titan's claim; (3) by finding that New York Lien Law, rather than the parties' agreement, established the priority of claims; and (4) by applying state rather than federal law in determining the IRS's rights.

## DISCUSSION

### A. *Titan's Claim v. Article 3–A Trust Fund Beneficiaries*

■ Titan maintains that the district court erred when it determined that Titan's claim as a completing surety was inferior to Article 3–A trust claims. Titan argues that its claim to the Contract Fund is superior to 3–A trust claims, a priority it earned when it became equitably subrogated to the rights of both Farney and TBTA in the Contract Fund.

Section 70(1) of New York Lien Law states that funds "received by a contractor under or in connection with a contract for ... a public improvement in this state, ... and any right of action for any such funds due or earned or to become due or earned, shall constitute assets of a trust." N.Y. Lien Law § 70(1). It is undisputed that the proceeds of the contract at issue are trust funds under Section 70 of the New York Lien Law.

That said, the next inquiry is the order of priority. The priority of claimholders is established by section 77 of the Lien Law. *First* priority is given to claims for taxes and for unemployment insurance and other contributions due by reason of employment. N.Y. Lien Law § 77(8)(a).

*Second* priority is given to trust claims of laborers for daily or weekly wages. *Id.* at (8)(b).

*Third* priority is given to trust claims of laborers for benefits or wage supplements. *Id.* at (8)(c).

*Fourth* priority is given to certain claims to a laborer's wages made by third parties. *Id.* at (8)(d).

Remaining trust claims are distributed pro rata. § 77(8).

■ Titan misunderstands its rights under New York law. Generally in a public improvement contract, the contractor is re-

quired to find a surety that will secure the performance of his contract. Upon default by the contractor, the surety, pursuant to a performance bond, completes the contract, at its own cost and expense. It then becomes equitably subrogated to the rights of the contractor and certain of the rights of the owner in the unpaid balance of the contract price. *See Tri–City Electric Co., Inc. v. People*, 96 A.D.2d 146, 149, 468 N.Y.S.2d 283, 286 (N.Y.App.Div.1983); *Scarsdale National Bank & Trust Co. v. United States Fidelity & Guaranty Co.*, 264 N.Y. 159, 190 N.E. 330 (1934). Under a performance bond, a completing surety becomes entitled to the money still owed by the owner to the defaulting contractor, but only after the claims of all 3–A trust fund beneficiaries are first satisfied. *Tri–City Electric Co., Inc.*, 96 A.D.2d at 149, 468 N.Y.S.2d at 286. It is perfectly clear that the rights of a surety in the trust proceeds do not trump those of the Article 3–A trust fund beneficiaries. *Id.* at 152, 468 N.Y.S.2d at 287–88.

Titan places great faith in *Scarsdale National Bank & Trust Co. v. United States Fidelity & Guaranty Co.*, 264 N.Y. 159, 190 N.E. 330 (1934), to demonstrate that its claim should have taken priority over the claims of the 3–A trust beneficiaries. Titan argues that, like the surety in *Scarsdale*, it was entitled to the entire amount of the Contract Fund. Titan's faith is misplaced.

*Scarsdale* dealt with a priority fight between an assignee of a defaulting contractor and a completing surety. There were no trust beneficiaries. *Scarsdale* held that the assignee was entitled only to whatever rights the assignor, the defaulting contractor, had. The surety, having completed the duties the contractor owed to the property owner, became subrogated to the rights of the owner as against the contractor; and because the surety completed the project it had a claim to withheld money superior to the defaulting contractor. A fortiori, the surety also had priority over the claim of a mere assignee of the contractor.

*Scarsdale* and its progeny stand for the unremarkable proposition that an assignee stands in the shoes of his assignor when it comes to awarding priorities. The district

court's decision is in complete accord with *Scarsdale*. After the claims of all the designated Article 3–A trust beneficiaries were paid, Titan was awarded the remainder (almost 50%) of the Contract Fund over the claims of Farney's judgment creditor. It is entitled to no more.

### B. *Titan's Claim v. NYDOL's Claim*

Titan maintains that the district court erred by giving the New York Department of Labor's claim under section 220–b of New York Labor Law priority over its claim.

New York Labor Law § 220, known as the "prevailing wage law," requires that all employees on public work projects be paid the prevailing rate of wages and supplements for the locality in which the project is located. N.Y. Labor Law § 220. Whenever the Commissioner of Labor determines that there are unpaid wages or supplements due under a contract that is subject to the New York prevailing wage law, the Commissioner must notify the concerned public agency to withhold from money due the contractor a sufficient sum to satisfy the law. § 220–b(2)(A).

In the fall of 1991, NYDOL determined that Farney had failed to pay prevailing wages and supplements to two employees. Following § 220–b, NYDOL issued a notice to TBTA to withhold $48,450.00 from payments due Farney, representing NYDOL's estimate of underpayments, interest and a possible penalty. At the time of Farney's default, the TBTA had actually withheld $21,495.65 from Farney pursuant to this notice.

Titan believes that the $21,495.65 should not have been awarded to NYDOL because Farney had already defaulted before NYDOL sent the notice to TBTA to withhold payment to Farney. Titan argues that, once Farney had defaulted, Farney was no longer owed any money; and therefore, no money could properly be withheld pursuant to section 220–b. This argument will not detain us long, because we do not agree that Farney was already in default when TBTA received NYDOL's notice.

In August 1995, the Internal Revenue Service submitted a Rule 3(g) Statement setting forth the facts as to which the IRS believed there was no genuine issue. In paragraph 8 of the 3(g) Statement, the IRS asserted that "[a]t the time of Farney's default, the TBTA was holding $97,601.88 ... which Farney had earned, but had not been paid under the Contract." Titan took no exception to this assertion. Because it is undisputed that the $21,495.65 withheld pursuant to NYDOL's notice is part of the $97,601.88 TBTA already held at the time of Farney's default, the IRS's statement obviously means that the $21,495.65 was held by TBTA at the time of default. Because this money was withheld pursuant to NYDOL's notice, the notice must have been received by TBTA prior to Farney's default.

It is well established that if a party fails to object or respond to the factual assertions in an opposing party's 3(g) Statement, those factual assertions will be deemed true. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996)(per curiam). This Court has recently cautioned that it will not accept the "tactic of contending on appeal that summary judgment was inappropriate on the ground that there were issues of fact to be tried after [a party] had declined to dispute the government's Rule 3(g) Statement." *United States v. All Right, Title and Interest in Real Property and Appurtenances*, 77 F.3d 648, 658 (2d Cir.), *cert. denied*, 117 S.Ct. 67 (1996). Because Titan did not object to the IRS's implicit statement that Farney was not yet in default when TBTA received NYDOL's notice to withhold, we will not entertain an argument that now contradicts an undisputed 3(g) statement.

Titan makes a last ditch effort (in its reply brief) to call into question the granting of "super-priority" to a claim under Labor Law § 220–b, noting that "super-priority" status has to date been granted only to a perfected mechanic's lien. Titan contends that, because a labor lien under § 220–b is not the equivalent of a mechanic's lien, it was inappropriate to grant NYDOL's labor lien "super-priority" status. The core of Titan's argument is that giving any recognition at all to NYDOL's claim under § 220–b was improper because Farney was already in default when Titan received NYDOL's notice. We have earlier rejected this argument, su-

pra. Because we find that no substantial issue has been raised regarding the granting of "super-priority" status to § 220–b claims we will leave resolution of that unbriefed issue to a more appropriate time.

### C. New York Lien Law v. the Parties' Surety Agreement

■ Titan contends that the district court erred when it determined that the priority of claims was governed by New York Lien Law rather than by the parties' surety agreement.

■ New York Lien Law specifically establishes the priority of claims to funds received in connection with a public improvement contract. N.Y. Lien Law § 77(8). Nowhere in Article 3–A of the New York Lien Law does it provide that the priority of claims prescribed therein is to apply only when the parties have not otherwise agreed. The purpose of Article 3–A is to safeguard the rights of those working on construction projects by providing for the payment of obligations incurred in performing the contract. See Atlas Building Systems, Inc. v. Rende, 236 A.D.2d 494, 653 N.Y.S.2d 694 (2d Dep't 1997); Ingalls Iron Works Co. v. Fehlhaber Corp., 337 F.Supp. 1085 (S.D.N.Y. 1972). The statute would be disemboweled if the parties to a construction contract could provide that one of them is to receive contract funds ahead of other workers and creditors protected by the legislature.

Titan concedes that the trust beneficiaries' claims are valid under New York Lien Law, but Titan claims it should have received the money first and then been allowed to settle the trust beneficiaries' claims itself. Such an arrangement would leave the trust beneficiaries at the mercy of Titan and therefore, obviously defeat the salutary purpose of Article 3–A.

### D. Federal Law v. State Law

■ Lastly, Titan maintains that the district court erred when it determined the priority of the IRS's tax claim under New York Lien Law rather than federal law.

Section 70 of the New York Lien Law provides for the creation and enforcement of statutory trusts out of the funds earned by a contractor working on a public improvement of real property. The purpose of the trust fund is to provide for the payment of obligations incurred in performing the contract, including tax obligations. See Flintkote Co. v. United States, 47 F.R.D. 322, 325 (S.D.N.Y.1969), aff'd 435 F.2d 556 (2d Cir. 1971).

Tax claims arising from the performance of a public improvement contract are expressly granted first priority. N.Y. Lien Law § 77(8)(a); see also Onondaga Commercial Dry Wall Corp. v. 150 Clinton Street, Inc., 25 N.Y.2d 106, 110, 302 N.Y.S.2d 795, 797–98, 250 N.E.2d 211, 212–13 (1969). These tax claims have often included claims for federal taxes as well as state and local taxes. See General Fire–Proof Door Corp. v. Citibank, N.A., 544 F.Supp. 191 (S.D.N.Y.1982); Marv Laxer Associates, Inc. v. Moredall Realty Corp., 533 F.Supp. 8 (S.D.N.Y.1981).

Titan makes a novel and unsupported argument that the provision of Article 3–A granting tax claims first priority applies only to state and local taxes, asserting that federal tax claims are governed solely by federal law. Titan misunderstands the law governing the priority of federal tax liens.

■ It is true that, as a general rule, the priority of competing liens against a taxpayer's property, including tax liens, is governed by federal law. See Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). But in Aquilino, the Supreme Court held that it is state law that determines the nature of the interest each claimant has in disputed proceeds. Id. at 515, 80 S.Ct. at 1281. For example, it is state law that determines whether a claim is recognized as an ordinary lien or accorded trust claim status. Id.

It is New York that determines what interest competing claimants have in the proceeds of a public improvement contract. New York has spoken clearly on this issue in Article 3–A, directing that the proceeds of a public improvement contract constitute a trust for certain claimants. New York has determined that the most important of those claimants, and those receiving first priority are those asserting tax claims. There is

nothing in Article 3–A or elsewhere that indicates that New York chose to limit that priority to only certain types of tax claims. Absent convincing proof to the contrary, we see no reason to narrow the plain language of Article 3–A to deny the IRS its claim under New York Lien Law.

We have considered all of Titan's additional arguments and find them to be without merit.

Accordingly, the judgment of the district court is affirmed.